ELMER HEIDELBAUGH v. STATE OF NEBRASKA.

FILED JULY 12, 1907.   No. 15,077.

1. **Criminal Law:** OPINIONS OF WITNESS. In a prosecution for the crime of arson, evidence describing the shoes worn by the accused and footprints found near the place where the crime was committed is proper and competent. But it is error to allow the witness making such comparisons to express his opinion that the footprints were made by the accused.

2. ————: INSTRUCTIONS: ALIBI. It is not reversible error to fail to instruct the jury on the subject of an alibi, where no request to charge upon that feature of the case has been tendered.

3. **Arson:** EVIDENCE. Evidence examined, and *held* insufficient to sustain the verdict.

ERROR to the district court for Nuckolls county: LES-
LIE G. HURD, JUDGE. *Reversed.*

*E. D. Brown* and *R. D. Sutherland,* for plaintiff in error.

W. T. Thompson, Attorney General, and Grant G.
Martin, contra.

BARNES, J.

On the 10th day of May, 1906, the barn of one August
Schmelling, situated in Nuckolls county, Nebraska, was
destroyed by fire, which was claimed to be of incendiary
origin. Elmer Heidelbaugh, hereafter called the defend-
ant, was arrested, and thereafter charged with having set
fire to said barn. His trial resulted in a conviction, and
he brings the case here for review.

Defendant contends (1) that the district court erred in
receiving the evidence of the prosecuting witness as to
footprints which he claims to have found in the vicinity
of his barn, and also near a building called the "Guthrie
corncrib," which had previously been destroyed by fire;
(2) that the court erred in failing to instruct the jury
as to the effect of the evidence which tended to estab-
lish an alibi; and (3) that the evidence is not sufficient to
sustain the verdict.

The record discloses that the prosecuting witness was
permitted to testify in substance, over the defendant's ob-
jections; that he found certain tracks or footprints in the
sand on his premises, starting about 50 feet from where
his barn stood, leading north and west toward the river;
that he found footprints in the corn field, after the other
fire occurred, about 175 yards from his place, leading
right through the field; that said footprints were made by
the same person as those found west of his barn after
the fire in question; that he had observed the shoes that
the defendant was wearing after the Guthrie fire occurred,
and the footprints he had described were, in his opinion,
made by defendant's shoes. It appears that he based his

opinion on the fact that the footprints were made by a No. 7 or No. 8 shoe; that the defendant's shoes were about that size, and were run down from the side. That this was prejudicial to the defendant there can be no doubt, because the state produced no other evidence by which it could be even inferred that defendant was within a mile and a quarter of the Schmelling barn on the evening when it was burned. It therefore must have been a controlling factor with the jury in arriving at their verdict. It also appears that no sufficient foundation was laid for its admission. The fact that the tracks were made by a No. 7 or No. 8 shoe was not sufficient to connect the defendant therewith, because shoes of that size are probably worn by at least two-thirds of the male population in the vicinity where the fire occurred. Again, there was nothing in the testimony to show when the tracks found in the corn field were made. They were not traced to or from the place where the Guthrie fire occurred, and those found in the vicinity of the fire in question were at least 50 feet from where the barn stood, and, so far as the evidence goes, they may have been made a week or a month before the fire occurred. To show how unreliable this evidence was, it is only necessary to refer to the testimony of the witness McDade. He testified that he took the shoe from the defendant's foot and fitted it in the tracks found. He stated repeatedly that he could not tell whether the tracks were made by the defendant's shoe or not. He further said that there was a large patch on the bottom of the shoe, and that he looked for that in the footprint and failed to find it. In conclusion, he said: "The only thing I could tell was that the shoe was about the size of the track. Just about the size; it would be impossible to tell exactly." Not only was the evidence complained of incompetent, but it tended to show that the defendant was suspected of having been the cause of the Guthrie fire, without showing that fire to have been of incendiary origin.

Finally, the witness without qualifying himself, was

allowed to express his opinion to the effect that the foot-prints were made by the defendant. This was reversible error. He should have been required to state the facts showing how his comparisons or tests were made, and allow the jury to determine the results thereof. The evidence complained of should have been excluded from the consideration of the jury.

It is next contended that the court erred in failing to instruct the jury as to the effect of defendant's evidence tending to establish an alibi. That question was before this court in *Ferguson v. State,* 52 Neb. 432, where it was said: "It is not reversible error to fail to instruct on the subject of an alibi, where no request to charge upon that feature of the case has been tendered." It appears from the record that the defendant tendered no request in this case; therefore, his contention cannot be sustained. *Hill v. State,* 42 Neb. 503; *Housh v. State,* 43 Neb. 163; *Metz v. State,* 46 Neb. 547; *Pjarrou v. State,* 47 Neb. 294.

Lastly, it is said that the evidence is not sufficient to support the verdict. It appears that the prosecuting witness and one McBride, who was working for him, left the premises in question shortly after 6 o'clock, and went on foot to the city of Superior, a distance of something over a mile and a quarter; that some time after arriving there they saw the defendant on the street, going in the direction of the river. This was not earlier than half past 6 o'clock in the evening before the fire occurred. It was more than a mile and a quarter from where these witnesses saw the defendant to the Schmelling barn. It was a mile and a half from the barn to the river, where the defendant was afterwards found, and that point was more than a mile and a half from the city. It appears that the defendant, with several others, was engaged in fishing on the afternoon and evening in question; that when in town he procured a luncheon for some of his companions at the river, which he placed in a paper sack and carried to them. Several witnesses saw him at the river with the paper sack at half past 7 o'clock. He was

also seen there by others at 8 o'clock and at half past 8 o'clock, at which time he, among others, noticed the fire in question. While it was not absolutely impossible for him to have gone from the town to the Schmelling barn, and from there to the fishing place on the river, where he was seen at half past 7 o'clock, yet it is quite improbable that he did so. It must be remembered that this was before sunset, and in the broad light of day, and it is not reasonable to suppose that he would have set fire to the barn at a time when he could have been readily seen by the persons who occupied the Guthrie place, which was only 18 or 20 rods therefrom.

An attempt was made to prove that defendant had a motive for the commission of the crime charged. It was shown that the prosecuting witness had told certain parties that he suspected that the defendant burned the Guthrie corncrib; that this fact had been communicated to the defendant, who thereupon said that he would get even with Schmelling or any other man that accused him of it. On cross-examination, however, the witness testified that the defendant said he was a poor man, and that such stories would injure him and destroy his opportunity to obtain work, and that he would make some one prove it. We are unable to see how this very natural expression tended in any way to show a motive for the commission of the crime. There was no evidence offered showing or tending to show that the fire was of incendiary origin. Its origin was, in fact, unaccounted for. Having in view the rule that the state in a criminal case must show the defendant's guilt beyond a reasonable doubt, it would seem that the evidence contained in the bill of exceptions is insufficient to sustain the verdict.

For the foregoing reasons, the judgment of the district court is reversed, and the cause is remanded for a new trial.

REVERSED.