THE STATE v. JOSEPH S. CHICK, JR., Appellant.

Division Two, April 9, 1920.

1. **EVIDENCE: Objections to Introduction: Insufficient Indictment.** Verbal objections to the introduction of testimony, on the ground that the indictment fails to charge an offense against defendant, and that such testimony constitutes a variance from the charge made in the indictment, avail nothing, nor do motions to strike out such testimony accomplish anything.

2. **INDICTMENT: Sufficiency: False Pretense.** The indictment set out in this case, whereby defendant is charged with selling a note, which he falsely represented was secured by a first lien on real estate, whereas the note actually so secured had previously been sold by him to another, is drawn under Section 4565, Revised Statutes 1909, and states every constituent fact necessary to be stated in order to charge the offense of designedly, by color of a false writing, obtaining the money of another, with intent to cheat and defraud such other.

3. **VARIANCE.** Where the trial court ruled that there was no variance between the indictment and proof, and a review of the while evidence on appeal leads to the same conclusion, it will not be ruled that there was any such variance.

4. **INSTRUCTION: Statements by Defendant: Presumption.** Where defendant, charged with a felony, did not testify in his own behalf, an instruction telling the jury that "statements (if any) made by defendant against himself the law presumes to be true, because said against himself, and that what he said for himself (if anything) the jury are not bound to believe, but may believe or disbelieve such statements as they are shown to be true or false by the evidence in the case," is not erroneous.

5. ———: Other Transactions: Intent and Motive. An instruction telling the jury that "the evidence introduced as to other transactions is submitted to your consideration for the sole purpose of shedding light (if they have that effect) upon the intent and motive of the defendant set out in the indictment, for which he is now on trial, and for no other purpose," and then proceeding to properly define intent and motive, was not erroneous, under the facts of this case.

6. ———: False Pretense: Check: Same as Money. An instruction, in the trial of a defendant charged with obtaining the money of another by false pretense, which tells the jury that, if such other person gave and delivered to defendant a check, which he afterwards cashed and received therefor currency, or by charging the same against the account of such other person, then the legal effect of the delivery of said check to defendant was the delivery to him of money, is not erroneous. The means employed being merely the vehicle by which defendant obtained the money, the receipt of the check and the conversion of it to defendant's use were parts of the res gestae in obtaining the money.

7. ———: ———: Means of Deception: First Mortgage: Duplicate Note. Where the defendant sold a note for $1600, secured by a deed of trust on real estate, which was recorded, and, under the pretense of collecting interest, paying taxes, etc., received back the deed of trust, and later sold a duplicate of said note to the prosecutrix, representing that it was the note secured by the mortgage, the delivery to her at the same time of said deed of trust did not give her a first lien on the property, but the first lien belonged to the prior purchaser; and the court did not err in so instructing.

8. ———: All Law of Case: Refusal of Defendant's. It is the duty of the court to give written instructions upon all questions of law arising in the case which are necessary for the jury's information in arriving at their verdict, whether or not a request for instructions on all the law of the case is made by defendant; but where the instructions given for the State cover every feature of the case necessary for the jury's information, it is not error to refuse instructions asked by defendant which cover substantially the same ground.

9. WITNESS: Crying: Sympathy of Jury: Admonition. The oral admonition of the court to the jury, requested by counsel for defendant, not to allow themselves to be influenced by their sympathy for a woman, a witness for the State, who upon being subjected to a rigid cross-examination by defendant's counsel gave way to her emotions and cried in the presence of the jury and had to be led away until she could compose herself, was full and fair in this case, and no reversible error can be based upon the incident.

Appeal from Jackson Circuit Court.—*Hon. Alonzo D. Burns*, Judge.

AFFIRMED.

*Frank P. Walsh, Henry L. Jost, Henry S. Conrad, R. R. Brewster, M. E. Casey, M. M. Bogie* and *James P. Aylward* for appellant.

(1) The indictment fails to allege that defendant either sold, assigned or delivered the note to Miss Kennedy or that Miss Kennedy bought it and parted with her money for it, relying on the false or fraudulent representations of defendant. It is, therefore, fatally defective and will not support a conviction. State v. Bonnell, 46 Mo. 397; State v. Saunders, 63 Mo. 484; State v. Clay, 100 Mo. 583; State v. Hathaway, 106 Mo. 236; State v. Terry, 109 Mo. 501; State v. Stowe, 132 Mo. 199; State v. Barber, 136 Mo. 443; State v. Phelan, 159 Mo. 129; State v. Kelly, 170 Mo. 151; State v. Hubbard, 170 Mo. 354; State v. Meysenburg, 171 Mo. 50. Because of the defect in said indictment, any evidence tending to prove a sale, transfer, assignment or delivery of said note was inadmissible. (2) There was a failure of proof or a fatal variance between the proof and the allegations of the indictment, the charge in the indictment being that defendant received $1,600 in lawful money of the United States, when the evidence showed he received a check for $2,550, drawn on the Missouri Savings Bank of Kansas City Missouri. State v. Munroe, 273 Mo. 341; State v. Bouslog, 266 Mo. 73; State v. Mispagel, 207 Mo. 557; State v. Castleton, 255 Mo. 201; State v. Rosefelt, 184 S. W. 904; State v. Salmon, 216 Mo. 251; State v. Shapiro, 216 Mo. 359; State v. Plant, 209 Mo. 307. (3) There was another material and prejudicial variance between the allegations in the indictment and the proof offered in support thereof, in that the indictment set forth a

certain mortgage-bond note and deed of trust, and the proof showed a number of checks, promissory notes, deeds of trust, interest-coupon notes, documents, with printed conditions thereon, which were not set forth and averred in said indictment and of which this defendant had no notice until the trial of this cause, when the same were introduced in evidence by the State over the objections and exceptions of the defendant. Authorities above. (4) If the representations alleged to have been made by the defendant were representations as to the law, or conclusions of law, the same cannot be made the basis of a prosecution for obtaining money by false pretenses, and on the other hand, if such representations were representations of fact, which were shown by the record to be true, there can be no conviction. State v. Cameron, 117 Mo. 648; State v. Barbee, 136 Mo. 445; State v. Lawrence, 178 Mo. 350; State v. Anderson, 186 Mo. 25; State v. Powell, 266 Mo. 108; State v. Jamison, 268 Mo. 195. (5) Instruction No. 2 given by the court on behalf of the State is erroneous. State v. Kennedy, 177 Mo. 119; State v. Boatright, 182 Mo. 49; State v. Steele, 226 Mo. 593; Stid v. Mo. Pac. Ry., 236 Mo. 398. (6) Instruction No. 7 given on behalf of the State is erroneous. State v. Mispagel, 207 Mo. 557; State v. Castleton, 225 Mo. 210; State v. Small, 272 Mo. 507. (7) The unwarranted remarks, statements, comments and references of the prosecuting attorneys, officially and specially employed, concerning the personal appearance of defendant, his failure to testify, and making him an object of personal abuse and ridicule, made in the presence of the jury, were highly prejudicial to the substantial rights of the defendant and were calculated to and did deprive this defendant of a fair and impartial trial, necessitating a reversal of this cause. State v. Graves, 95 Mo. 510; State v. Jackson, 95 Mo. 653; State v. Young, 95 Mo. 365; State v. Moxley, 102 Mo. 374; State v. Ullrich, 110 Mo. 365. (8) The improper conduct and comments of the court in expressly ap-

proving the prejudicial remarks and statements of the prosecuting attorney in the presence of the jury were highly prejudicial, calculated to and did deprive the defendant of his right to a fair and impartial trial. Wright v. Richmond, 21 Mo. App. 76; State v. Kring, 64 Mo. 591; Rose v. Kansas City, 125 Mo. 235; Wheeler v. Wallace, 53 Mich. 355; State v. Dozier, 177 S. W. 359. (9) The court committed error in refusing to sustain defendant's motion to dicharge the jury at the time the witness, Mrs. E. L. Massie began to sob and cry violently and aloud, without any apparent reason, in the presence of the jury.

*Frank W. McAllister*, Attorney-General, and *Henry B. Hunt*, Assistant Attorney-General, for respondent; *Isaac B. Kimbrell* of counsel.

(1) The indictment is sufficient. Secs. 4565, 4765, R. S. 1909; Laws 1913, p. 222; Laws 1911, p. 194; State v. Young, 266 Mo. 730; State v. Foley, 247 Mo. 628; State v. Loesch, 180 S. W. 878. (a) The indictment alleges the assignment of the note. State v. Bonnell, 46 Mo. 397; State v. Saunders, 63 Mo. 484; State v. Clay, 100 Mo. 583; State v. Hathaway, 106 Mo. 236; State v. Terry, 109 Mo. 501; State v. Stowe, 132 Mo. 199. (b) Therefore, the evidence tending to prove a sale, assignment and delivery of said note was relevant and admissible. (2) There was no variance between the allegations of the indictment and the proof. The allegation that appellant received money, was fully met by proof that he received a check, which he thereafter cashed. He said he got the money. State v. Terry, 109 Mo. 622; State v. Foley, 247 Mo. 633; State v. Palmer, 40 Kan. 477; Lewis v. Com., 91 S. E. (Va.) 174; State v. Gibson, 132 Iowa, 56; State v. Germain, 103 Pac. (Ore.) 523; People v. Leavens, 106 Pac. (Cal.) 1106; State v. Jackson, 69 S. E. (S. C.) 885; State v. Daniel, 83 S. C. 313; State v. Dimick, 107 N. Y. 32; People v. Lammerts, 164 N. Y. 144. (3) The

giving in evidence of the deeds of trust, notes and checks other than the instruments set forth in the indictment, were relevant on the question of intent, and to prove the very crime charged. It was not necessary for the pleader to set forth the evidence in the indictment. State v. Hyde, 234 Mo. 226; State v. Bailey, 190 Mo. 280; State v. Myers, 82 Mo. 562; State v. Bayne, 88 Mo. 609; State v. Wilson, 143 Mo. 345; State v. Rosenberg, 162 Mo. 371; State v. Katz, 266 Mo. 502; State v. Patterson, 271 Mo. 109; State v. Hill, 273 Mo. 337. (a) The representations made by appellant were representations as to past events and existing facts that were shown to be false; and were not representations as to the law; nor were the representations made as to facts which were shown to be true. State v. Nord, 230 Mo. 660; State v. Krouse, 171 Mo. App. 429; State v. Evers, 49 Mo. 545; State v. Vorback, 66 Mo. 172; State v. DeLay, 93 Mo. 102. (4) Instruction No. 2, given on behalf of the State, is not erroneous. It sets forth the general charge, is bottomed upon the indictment, and required the jury to find every element of the crime before it could convict. It properly submitted the question of conspiracy. Sec. 4565, R. S. 1909; State v. Keyes, 196 Mo. 161; State v. Sykes, 191 Mo. 78; State v. Potts, 239 Mo. 411; State ex rel. v. Ice Co., 246 Mo. 219. (5) Instruction No. 7, given for the State, states the law. State v. Hoshor, 67 Pac. 388. (6) The remarks of counsel do not warrant a reversal of this case. State v. Hughes, 258 Mo. 271; State v. Prunty, 208 S. W. 97. (7) The remarks of the court do not warrant a setting aside of the verdict. State v. Hughes, 258 Mo. 271. (8) The court did not err in refusing to discharge the jury because of the crying of Mrs. Massie.

MOZLEY, C.—Joseph S. Chick, Jr., was indicted by a grand jury in the Circuit Court of Jackson County, Missouri, in which he is charged that by the use of false representation and pretense he feloniously

defrauded Miss. A. P. I. Kennedy of the sum of $1600. He was tried in said court before a jury on the 11th day of the September term, 1918, and convicted, and his punishment fixed at two years in the penitentiary. Motions for new trial and in arrest were filed and overruled by the court, and exceptions to that action were duly preserved. The case is regularly here on defendant's appeal.

Miss. A. P. I. Kennedy was a school teacher and had been for more than thirty years. She had taught for thirty years in Kansas City; she taught in the country before going to Kansas City. Defendant had gone to school to her in the country when he was a small boy, and she had known him since that time; she knew defendant's family and had great respect for them and, also, for the defendant. By dint of perseverance and careful saving she had, during the thirty years of her scholastic work, gotten together $2500 or $2600 in money.

The defendant had also moved to Kansas City and was operating a business known as the "Chick Investment Company," and the entire operations of the concern were in his hands (he owned all the stock) and were performed personally by him or under his immediate supervision and direction. It appears from the evidence that a part of his business was to sell notes secured by first mortgages on approved real estate to customers who desired to make what they thought were safe investments (and such investments were represented by him to be safe) and make the amount thus invested earn interest until the note would fall due and be paid off by the maker thereof. Miss Kennedy desired to invest her money in this wise with defendant, in fact defendant earnestly solicited her to do so, and it resulted that he sold her two notes on December 16, 1914, which defendant told her were secured by first mortgages. This transaction is detailed by the testimony of Miss Kennedy as follows:

"Q. Did you have any business dealings with him (defendant)—state whether or not you had about the month of December, 1914? A. December 16, 1914, I bought two notes from him that he told me were secured by first mortgages.

"Q. Had you had a conversation with him about a business matter about the 1st of December of that year? A. The 2nd of December. A note was secured.

"Q. Did you go to where he was and talk with him? A. Yes, sir.

"Q. Where did you see him? A. Why, outside that railing; he came to meet me outside of that railing; where Miss Winship was back of the railing he came to meet me.

"Q. You mean in the Scarritt building? A. Yes, sir; not in his private office.

"Q. Then your meeting was in his office in the Scarritt building? A. Yes, sir.

"Q. In what county and state is that located? A. Jackson County, State of Missouri.

"Q. What offices did he occupy there at that time; that is, on what floor were the offices located and how many rooms did he occupy, and what signs were on the door as you recall. A. At the entrance was "J. S. Chick Investment Company;" a large entry hall and right from the hall you entered into the office.

"Q. Were you in the Chick Investment Company's office? A. Yes, sir.

"Q. Did you talk with Chick there? A. Yes, sir.

"Q. What did you say to him and what did he say to you? A. I told him I had come for the $1600 due on a note I had bought from him (a prior transaction) which he paid with interest due thereon and he urged me to re-invest the money with him, you will take that to somebody else and you ought to let me invest it. I collected the note which with the interest amounted to $1648. This I deposited in the bank and it ran my available cash to a little more than $2500.

"Q. Now, after this conversation did you have a second conversation with him about the amount of cash you had available? A. Yes, sir. It was between the 2nd and 16th of December, 1914. I had a telephone conversation with him, I told him I would consider; that he could show me. I told him I would consider it and he could come out if he had notes secured by first mortgages and places, he could come out and show me, and an appointment was made to meet me at the school house at noon, and between the 2nd and 6th of December, 1914, he called.

"Q. How did you go to see the places, if at all? A. He took me in a car. He took me to 3433 Bellefontaine; there were two houses there, one faced Bellefontaine and the other faced Howard; I told him I would consider the house facing Bellefontaine, but would not consider the other at all.

"Q. Did he tell you the amount of the mortgage on the one you said you would consider? A. $1200.

"Q. Then where did you go? A. To 3806 Olive.

"Q. Did you know Edward Van Osten? A. Not at that time. He did not tell me who owned the property he had shown me.

"Q. What did he say about the sort of paper he had against those properties? A. He said he had first mortgages; that they were first class and that he would see that I was protected. He showed me the house at 3806 Olive and showed it was well worth buying a note for $1600 on this house. I told him I did not have enough money to make the investment, as the two sums aggregated $2800, and all I could get together was $2500." An arrangement was made by which the witness gave defendant her personal note for $300 and her check for $2505.14, the $5.14 representing the accrued interest on the $2500. "I gave my personal note and the check to defendant personally, and the two deeds of trust, one the Bellefontaine property and the other the Olive street property, together with the two notes that defendant said were secured by first mort-

age, were handed to me, but the abstract was kept by. defendant in his office, on the ground, as he said, it would be safer with him, but he gave me a receipt for it.'' The check paid to defendant was drawn December, 15th, and delivered to defendant on the 16th of December, 1914, and the deal closed on that day, and was cashed by the Chick Investment Company.

. The proof further shows, as a sequel to the story, that Mrs. E. T. Massie had, on the 9th day of December, 1914, bought from defendant the identical note and deed of trust which he subsequently assured Miss Kennedy he was selling to her, and paid for it with the following check:

"No. 65.            Kansas City, Mo. Dec. 9th, 1914.
"Western Exchange Bank.
      Kansas City, Mo.
      "Pay to the order of J. S. Chick Investment Co.
Sixteen hundred and no/100 dollars.     ($1600.00)
                              "E. T. Massie
                              "E. M.''

This check was cleared and was marked paid and Chick got the money named therein.    At the time of receiving the check he gave Mrs. Massie a real-estate-bond note and in a day or two brought to her home the deed of trust securing the same which, upon the pretext of caring for it and looking after insurance, taxes, etc., he induced her to allow him to take charge of for her, and this enabled him to deliver it later to Miss Kennedy, which he did.

On the 22nd of November, 1915, the Chick Investment Company collapsed, and Hunt C. Moore was appointed its receiver. During the course of the receivership it developed that defendant had been largely engaged in the duplication of the notes described in the deeds of trust and that Miss Kennedy's note was a duplicate and not the note he had assured her he was selling to her.

The defendant admitted to the receiver that Miss Kennedy's note was a duplicate of the original note.

With the exception of recalling J. R. Morrison, a deputy recorder, as a witness, defendant offered no testimony, but stood on his demurrer to the case made by the State. The testimony of Morrison related only to the course of business in the recorder's office as to the handling and recording of deeds of trust and their delivery to the owners.

The demurrer was overruled by the court and is here assigned as error by defendant.

1. Appellant has charged to the credit of the court *nisi* the commission of one hundred alleged errors in the trial of the case, but we think the points determinative of this case may be brought within a much narrower scope: (1) Is the indictment good? (2), Were the jury properly instructed, and (3), Is the testimony sufficient to justify the jury finding the defendant guilty? If so, his conviction should be upheld; but if otherwise, it should be reversed and remanded.

Appellant contends that the indictment is fatally defective and will not support a conviction because (he says) it fails to allege that defendant sold, assigned or delivered the note to Miss Kennedy, or that Miss Kennedy bought it and parted with her money for it, relying on the false or fraudulent representations of defendant.

II. The indictment, so far as necessary to quote, reads as follows:

"The grand jurors for the State of Missouri, duly impaneled, sworn and charged to inquire within and for the body of the County of Jackson, upon their oath present and charge that one Joseph S. Chick, Jr., whose Christian name in full is unknown to said

Indictment. jurors, on the 6th day of December, 1914, at the County of Jackson and State of Missouri, contriving, designing and intending to cheat and defraud one A. P. I. Kennedy of her goods and chattels and personal property, did apply to and request the said A. P. I. Kennedy to purchase from him, the said Joseph S. Chick, Jr., what purported to be a first-

mortgage real-estate-bond note, which he, the said Joseph S. Chick, Jr., then and there had in his possession and under his control, and the said Joseph S. Chick, Jr., did then and there unlawfully, feloniously and designedly, with the felonious intent then and there to cheat and defraud the said A. P. I. Kennedy of her money, and goods, chattels and personal property, represent, pretend and say to the said A. P. I. Kennedy that said first-mortgage real-estate-bond note was then and there secured by a first deed of trust on the following property and premises, to wit: [Here the property upon which Miss Kennedy took the two notes herein referred to is described.]

"And to further effect his design to cheat and defraud the said A. P. I. Kennedy of her money, goods, chattels and personal property, he, the said Joseph S. Chick, Jr., did then and there unlawfully, feloniously and designedly, with the felonious intent then and there to cheat and defraud-*him,* the said A. P. I. Kennedy of her money, goods, chattels and personal property, exhibit and show to the said A. P. I. Kennedy a certain first-mortgage real-estate-bond note and deed of trust which he, the said Joseph S. Chick, Jr., had in his possession and under his control, which said first-mortgage real-estate-bond note and deed of trust is as follows: [Here the same is set out in full.]

"And the said Joseph S. Chick, Jr., did then and there unlawfully, feloniously and designedly, with the felonious intent then and there to cheat and defraud the said A. P. I. Kennedy of her money, goods, chattels and personal property, represent, pretend and say to the said A. P. I. Kennedy that said first-mortgage real-estate-bond note as hereinbefore set out and described was then and there a true and genuine first-mortgage real-estate-bond note, and was then and there the first-mortgage real-estate-bond note described and referred to in the deed of trust heretofore set out in the indictment, and that said first-mortgage bond note was then and there a true, genuine and subsisting first claim and

demand against the property hereinbefore described and set out in the indictment.

"And the said A. P. I. Kennedy, believing the false and fraudulent statements and pretenses so made as aforesaid to her, the said A. P. I. Kennedy, by him, the said Joseph S. Chick, Jr., to be true, relying thereon and being deceived thereby, was induced by reason thereof to pay, and did then and there pay, to the said Joseph S. Chick, Jr., the sum of sixteen hundred dollars, lawful money of the United States, of the value of sixteen hundred dollars, of the money, goods, chattles and personal property of the said A. P. I. Kennedy.

"And the said Joseph S. Chick, Jr., by means and by use of the false and fraudulent statements and pretenses so made as aforesaid to her, the said A. P. I. Kennedy, by him, the said Joseph S. Chick, Jr., did then and there unlawfully, feloniously and designedly, with the felonious intent then and there to cheat and defraud the said A. P. I. Kennedy of her money, goods, chattels and personal property, obtain of and from her, the said A. P. I. Kennedy, sixteen hundred dollars, lawful money of the United States, of the value of sixteen hundred dollars, of the money, goods, chattels and personal property of the said A. P. I. Kennedy.

"Whereas, in truth and in fact, the said first-mortgage real-estate-bond note which he, the said Joseph S. Chick, Jr., then and there exhibited and showed to the said A. P. I. Kennedy, was not then and there a true and genuine first-mortgage bond note described and referred to in the deed of trust hereinbefore set out in this indictment, and was not then and there a true, genuine first and subsisting claim and demand against the property hereinbefore set out and described in this indictment which he, the said Joseph S. Chick, Jr., then and there well knew, against the peace and dignity of the State."

Set forth in the body of the indictment is the following assignment and transfer by defendant of the note in question to Miss Kennedy:

"For value received The J. S. Chick Investment Co. hereby assigns and transfers this note or bond to Amanda P. I. Kennedy or order, without recourse, together with all its interest in and rights under the deed of trust securing same.

"THE J. S. CHICK INVESTMENT CO.

"By J. S. CHICK, JR.

Pesident."

III. The testimony of Miss Kennedy shows that said note and deed of trust, together with the note and deed of trust on the Bellefontaine property, was delivered to her by defendant in his office, on the 16th day of December, 1914, which was the time the money was paid to defendant and the deal closed.

This testimony was objected to because the indictment failed to charge an offense against defendant, and that such testimony constituted a variance from the charge made in the indictment. The objection was overruled by the court and we think properly so. Such objections to the introduction of testimony made verbally during the course of the trial avail nothing, nor do motions to strike out such testimony accomplish anything. It is just the same as if neither had been made.

This court has condemned and declined to tolerate such practice. In the case of State v. Loesch, 180 S. W. 877, it was said: "The repeated efforts of counsel for defendant to assail the integrity of indictments or informations by oral objection thereto, and thus avoid the requirements of the statute, have frequently been condemned by this court and termed 'innovations in the practice which will not be tolerated.' "

IV. Is the indictment subject to the assaults made upon it by defendant? Section 4565, Revised Statutes 1909, provides that: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, . . . obtain from any person any money, personal property

Sufficiency of Indictment.

. . . or other valuable thing or effects whatsoever . . . shall upon conviction be punished by imprisonment in the penitentiary for a term not exceeding seven years.''

We think the indictment in the case in hand is drawn under the provision of Section 4565, and that it states every constituent fact necessary to be stated under said section to charge the offense denounced therein against defendant. Nor is it subject to the constitutional abjection made, that it fails, to advise the defendant of "nature and cause of the accusation" against him. [State v. Loesch, 180 S. W. 875; State v. Terry, 109 Mo. 601; State v. Martin, 226 Mo. l., c. 548; State v. Woodward, 156 Mo. 143; State v. Samuels, 144 Mo. 68; State v. Chissell, 245 Mo. l. c. 557; State v. Myers, 82 Mo. 558; State v. Vandenburg, 159 Mo. 230; State v. Kelly, 170 Mo. 151; State v. Hubbard, 170 Mo. 346.]

We, therefore, hold that the indictment is good, and rule the contention against appellant.

V. As to the alleged variance between the averments of the indictment and the proof offered in support thereof, Section 5114, Revised Statutes 1909, provides as follows:

Variance.

"Whenever on the trial of any felony . . . there shall appear to be any variance between the statement in any indictment . . . and the evidence offered in proof thereof . . . in the name or description of any matter or thing whatsoever therein named or described . . . such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant."

In the case of State v. Jackson, 221 Mo. l. c. 506, the precise question here raised was passed on, and Judge Fox, speaking for the court, said that it had been expressly ruled in the case of State v. Carragin, 210 Mo. 351, and State v. Sharpless, 212 Mo. l. c. 202,

that the circuit court having failed to find that there was any material variance, an omission in the information of the genuine indorsement of the defendant furnished no ground for the reversal of the judgment. In the case of State v. Foley, 247 Mo. l. c. 633, this court, in passing upon a question of variance announced the law as follows:

"Defendant's learned counsel strenuously urges that there is a variance between the charges contained in the second count and the proof adduced to support this charge; in that defendant was indicted for obtaining 'twenty dollars in lawful money of the United States,' while the proof showed that he obtained a 'warrant on the city treasurer of the City of St. Louis for the value of twenty dollars.' It may well be doubted, whether upon the facts in evidence, this contention has any merit. The testimony shows that the voucher (called by some of the witnesses, and in the first count of the indictment a 'warrant') was prepared in the office of the City Auditor; there stamped 'City Auditor's Office, surrendered;' that the voucher with the receipt appended was then passed by the Auditor's office to the office of the City Treasurer, where the defendant called when he came to be paid; that he signed the appended receipt, wrote his name in the form of an indorsement on the back of the voucher, and got the twenty dollars in question. The voucher was paid on the same day it was issued, for it was stamped 'City Treasurer's Office, September 30, 1910, St. Louis, Missouri.' After payment the voucher was returned to the Auditor's Office and filed, being stamped, 'Paid and filed, October first, 1910, W. R. Hodges, Auditor.' From these facts, we are impelled to the conclusion that the delivery of the voucher to defendant, if it ever was physically delivered to him, was but a mere detail of the manner in which he obtained the twenty dollars in question. That it all was, in a sense, but part of the res gestae.

"If defendant was prejudiced, such hurt accrued to him by reason of a variance. The statute requires

matters of alleged variance to be called to the attention of the court. Having neglected to do so we are not bound to consider it now, the more so, since we cannot find from the facts that defendant's rights were prejudiced by reason of the alleged variance, when we look at the whole record.''

Appellant raised the point of alleged variance between the charge in the indictment and the proof adduced in support thereof, but the court which tried the case and to which the question of variance was submitted found that no variance existed. Looking at the evidence as a whole we are unable to find any variance between the charge made and the proof adduced and agree with the ruling of the court *nisi*. We, accordingly, rule the point against appellant.

VI. Appellant complains of all the instructions (fifteen in number) given by the State, and characterizes each of them as reversible error. We cannot believe that counsel is serious in this contention, but prefer to conclude rather that this assignment (together with the other ninety-nine) was an attempt not to allow any error or supposed error to escape review in this court.

Instruction 1-a merely told the jury that the instructions given were the law of the case and that it was their duty to apply the proven facts to the law as given and return their verdict accordingly, and not otherwise. Comment on this instruction would be a waste of time.

Instruction No. 2 submits for the finding of the jury, beyond a reasonable doubt, every element of the crime charged against defendant—whether the false statements and pretenses were made to Miss Kennedy, whether she relied upon them and was deceived thereby and on account thereof was induced to, **False Pretense.** and did, part with her money in the purchase of said note and deed of trust; the truthfulness of said representation and pretenses is properly falsified and that defendant at the time knew they were

false and untrue, and if these facts were found to exist the jury would find the defendant guilty as charged and assess his punishment at imprisonment in the State peni-tentiary for a term not less than two nor more than seven years. We think this instruction properly submitted the issue to the jury.

Instruction No. 3 is upon the presumption of de-fendant's innocence of the charge against him, and if the jury had a reasonable doubt of defend-

Presumption of Innocence. ant's guilt they would aquit him. This in-struction is a proper one and there was no error in giving it.

Instruction No. 4 is the usual and approved instruc-tion to the effect that the jury are the sole judges of the credibility of the witnesses, and the weight

Credibility of Witnesses. and value to be given to their testimony, and is not subject to the objection made by appellant.

Instruction No. 5—that statements (if any) made by defendant against himself the law presumed to be true, because said against himself; that what he said for him-self (if anything) the jury were not bound

Statements Against Self. to believe, but the jury may believe or disbe-lieve such statements as they are shown to be true or false by the evidence in the case. There is nothing wrong with this instruction and the court committed no error in giving it.

Instruction No. 6 reads: "The court instructs the jury that the evidence introduced as to other trans-actions, if any, is submitted to your consideration for the sole purpose of shedding light (if they have that effect) upon the intent and motive of the defendant set

Other Offenses. out in the information [indictment] in this case, for which he is now on trial, and for no other purpose. " The instruction then pro-ceeds to properly define "intent and motive." We hold, under the facts of this case, that the court did not err in giving said instruction.

Instruction No. 7 told the jury that if Amanda P. I. Kennedy gave and delivered to defendant (on the 16th

State v. Chick.

day of December, 1914) a check for $2505.14, or more, and that he thereafter cashed said check and received therefor cash, currency, or by charging the same against the account of Amanda P. I. Kennedy, then the legal effect of the delivery of said check to defendant by her was the delivery to him of money and you should so find.'' We think this in-instruction is well enough, since as pointed out in the case of State v. Foley, supra, it was merely the means, the vehicle, by which defendant got the cash money, which defendant did in the instant case, at the Traders National Bank, on the 17th day of December, 1914, the next day after the check was delivered to him. We think, as held in the Foley case that the receipt of the check and the conversion of it into cash was a part of the *res gestae* in obtaining the money, and that the instruction was properly given.

Check as
Money.

Instruction No. 8 is a duplicate of Instruction No. 3 upon the presumption of defendant's innocence until proven guilty beyond a reasonable doubt. While it was not necessary to duplicate this instruction yet it submits to the jury the same proposition as No. 3, and is couched in the same language. We think no prejudicial harm could possibly result therefrom and that the giving of it is not reversible error.

Duplication.

Instruction No. 9 advises the jury that the information (indictment) is a mere formal charge and no evidence of defendant's guilt and that they would be careful not to allow themselves to be influenced on account of the indictment. Appellant complains that said instruction is reversible error, but we are unable to agree with him. We think the instruction is a correct one and should have been given.

Indictment
As Evidence.

from the evidence that Miss Amanda P. I. Kennedy
Instruction No. 10 told the jury that if they found parted with her money upon the faith of the note and

On Faith of
Representations.

mortgage and not upon the representations made by the defendant, if he did make any, they would find defendant not guilty. Defendant's objection to this instruction cannot be regarded otherwise than frivolous.

Instruction No. 11 that the false representations, if any, were not made for the purpose of obtaining any sum of money from Miss Amanda P. I. Kennedy and that she did not rely thereon, and that she was not induced thereby to part with her property, then they would acquit the defendant. We are unable to perceive why appellant objects to this instruction, but whatever may have been his idea, we think the objection is utterly without merit.

Appellant's objection to Instruction No. 12 is not capable of being understood. It reads: "The court instructs the jury that the defendant is entitled to a fair and impartial trial and he cannot be convicted except that

Fair Trial.

he be proven guilty beyond a reasonable doubt, and facts and circumstances from which nothing can be reasonably inferred than a suspicion that he might be guilty, will not justify his conviction." His objection to this instruction implies the idea that he was opposed to having a fair and impartial trial and opposed to not allowing the jury to act upon mere suspicion of his guilt. We differ from appellant in this respect and notwithstanding his objection, we hold that he was entitled to a fair and impartial trial and that there was no prejudicial error committed by the giving of said instruction.

Instruction No. 13 told the jury that it devolves on the State to show by the evidence to the satisfaction of the jury beyond a reasonable doubt every material fact which under these instructions is necessary to constitute

Every Material
Fact.

the offense with which the defendant stands charged, and if the jury have a reasonable doubt arising from the insufficiency of the evidence of the existence of any material fact it was

State v. Chick.

their duty to acquit the defendant. There was no error in giving this instruction.

Nor was there any error in giving Instruction No. 14 which defined wilfully to mean intentional and not accidental.

Nor do we think that the court committed error in giving Instruction No. 15. If Mrs. Massie bought the original note of $1600, and the deed of trust covering the premises at 3806 Olive Street and on or before the 10th day of December said deed of trust was recorded, she had a first lien on said property. Miss Kennedy's note and the identical deed of trust first sold and delivered to Mrs. Massie, and taken back by defendant under the pretense of looking after said property, making collections, paying taxes, etc., and delivered to Miss Kennedy on the 16th day of December, 1914, would not, as between these women, interfere with Mrs. Massie's prior rights in the property, nor prevent Miss Kennedy's note from being a duplicate and not the genuine first-mortgage bond note secured by said deed of trust.

**First Mortgage.**

We have thus carefully reviewed the instructions given by the court and we have reached the conclusion that they cover every necessary feature of the case for the jury's enlightenment.

VII. The defendant asked twenty instructions which the court refused to give. The last, number 20, was a request that the court instruct the jury upon each and every phase of the law involved in the controversy, whether the same be requested or omitted to be asked by his counsel, and the court requested the attorneys for defendant to point out any instruction desired and stated it would be given if the law had not already been given.

**All Law of Case.**

It is the duty of the court to give the jury such written instructions, whether requested or not, upon questions of law arising in the case which are necessary for their information in giving their verdict. [Sec. 5231,

R. S. 1909.] But it would not be proper for the court to go beyond the requirement of the statute, even though he was given a blanket request (as in the instant case) to do so. All that is required is that instructions be given covering every feature of the case necessary for the jury's information in giving their verdict.

We have carefully examined the other nineteen refused instructions and have reached the conclusion that they were properly refused. All peremptory instructions were properly refused and the others cover substantially the same ground as the instructions for the State. It has been held that the defendant has no right to have the State's instructions duplicated. [State v. Guinn, 174 Mo. 680.] It is manifest that such course would tend to confuse the jury rather than to make clear the law applicable to the case. We hold that the court did not err in refusing to give said instructions.

VIII. Appellant complains that the judgment should be reversed on account of alleged improper remarks made by counsel for the State, and because the court refused to quash the panel, for the reason that one of the witnesses, while being subjected to a rigid cross-examination by defendant's counsel, gave way to her emotions and cried in the presence of the jury, which resulted in her temporary withdrawal from the witness stand until her composure was regained.

As to improper remarks of counsel we are unable to discover, if any were made, any failure on the part of the court to promptly sustain an objection thereto and admonish counsel to keep within the record and direct the jury to disregard such statements. Under the facts of this case, if remarks made were improper, they would not be prejudicial error sufficient to justify a reversal of the case.

Upon the motion to quash the panel the following transpired:

"Mr. BREWSTER: I move the court to charge the jury that it is their duty to disregard absolutely this incident,

that is, the crying of the lady, and to charge the jury that they have no right to let any sympathy that they may feel for her weigh with them in the slightest bit in making up their verdict in this case, that is, sympathy because of crying.

"The Court: You mean you want me to charge them verbally, or instruct them? ·

"Mr. Brewster: Charge them verbally.

"The Court: Right now, when they come back?   .

"Mr. Brewster: Yes, sir: and also that the conduct of the assistant prosecutor in carrying the witness from the chair and from the courtroom is improper.

"Mrs. Etta Massie (recalled).

"The Court: Now, Mrs. Massie, if you have recovered and think that you are strong enough to go on with the testimony and not break down any more, we will proceed, otherwise we can't. Under the law, that thing ought not occur in the court room. The tears of a woman always excite a man and is calculated to arouse sympathy for her, and the court room, of course, is not the place for that. You will have to avoid that now and nerve yourself up to go through with this and answer the questions that the lawyer propounds to you, and if you think you are able to go on without breaking down any more we will proceed with the case. Of course, you will have to tell some time and we want you to be very particular and not cry any more.

"The Witness: I will try not. It was just a nervousness.

"The Court: There is nothing to cry about. You are being treated perfectly fair by the lawyer. Mr. Conrad wasn't saying a thing that was calculated to arouse you in any way and is not going to. If you will just listen to what the questions are and then answer, you will get along all right. You may bring the jury. Proceed.

"Jury Present.

"The Court: Gentlemen of the Jury, I want to say to you whatever impression that you may have had made

on you by reason of this lady breaking down, or whatever feeling or whatever reason or anything of that kind, may have found lodgment in your mind in regard to it, you must eradicate it, and not allow it to affect you one way or the other, the fact she broke down and commenced crying. That hasn't anything to do with the case; that must not affect you in one way or the other, or have any impression on you one way or the other, directly or indirectly.

"Mr. Brewster: The defendant objects to the fact that the court only partially complied with the motion of the defendant as to the charge to the jury, and excepts.

"The Court (Interrupting): Anything I left out, if you will call my attention to it I will give it if it is proper.

"Mr. Brewster: I asked you to instruct them with reference to the conduct of counsel.

"The Court: If you gentlemen saw an attorney standing here by her, or saying anything to her, or taking her away, that must not have any effect one way or the other. Proceed, Mr. Conrad."

We agree with the action of the trial court in the premises, and overrule the assignments.

The verdict of the jury and the judgment and sentence of the court are in regular and proper form.

The defendant has been convicted of the crime charged against him which he committed under circumstances that furnish a sorry commentary upon his honesty, uprightness and integrity. He took advantage of one whom he had known more than thirty years and had every reason which would prompt an honest man to deal honestly with her, but he misled and overreached her by his false and fraudulent representations and induced her to give him her money and he gave her nothing in return. That his guilt is abundantly established by the evidence we have no doubt. We think he has had a fair trial, and that his sentence should be affirmed.

It is so ordered. *White, C.,* concurs; *Bailey, C.,* not sitting.

PER CURIAM:—The foregoing opinion of MOZLEY, C., is hereby adopted as the opinion of the court. All of the judges concur.