**STATE of Missouri, Respondent (Plaintiff),**

**v.**

**Robert Eugene McGLATHERY, Appellant (Defendant).**

**No. 52173.**

Supreme Court of Missouri,
Division No. 1.

Feb. 13, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied March 13, 1967.

Robert G. Duncan, Lewis E. Pierce, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Frederick E. Steck, Sp. Asst. Atty. Gen., Sikeston, for respondent.

WELBORN, Commissioner.

This is an appeal from a judgment imposing a ten-year sentence for burglary in the second degree. The judgment was entered upon a jury's verdict of the guilt of the appellant and the trial judge assessed the punishment in accordance with the Habitual Criminal Act, § 556.280, RSMo 1959, V.A.M.S.

The building involved in the burglary housed the North Gate Super Market in the town of Odessa. The building was located in the north part of town, near Old Highway 40. At approximately 11:00 P.M., on June 16, 1965, Wyman Murphy, residing with his parents in a trailer located in a trailer park approximately two blocks west of the North Gate Super Market, noticed a car stop across from his trailer and under a street light. Murphy called to his mother in the trailer and she too saw the auto, described as a light-colored 1959 or 1960 Dodge. Mrs. Murphy saw a man get out on the right-hand side of the auto and walk northeast toward Old Highway 40 and in the direction of the market. Both Mrs.

Murphy and Wyman saw a man emerge from the driver's side of the vehicle, go around to the front of the car, raise the hood, re-enter the car and then leave it, walking in the same direction as the first man.

The second man was described as taller than the first and wearing dark or black clothing. Wyman described his attire as follows: "It was black clothing; black shirt and black pair of pants, and I noticed one thing, where it must have been a short shirt, because when he bent over the hood of the car, you could see, approximately, 6 or 8 inches of white in between the shirt and his pants; it was a short shirt."

Mrs. Murphy called her landlord about the automobile and then the town night watchman, Mr. Frazier Miller. Wyman went out and examined the auto, writing down its license number. He also examined it with Mr. Miller, when the latter appeared.

Miller called his night watchman relief, "Pete" Warren, and the two of them examined the vehicle. Miller remained in its vicinity while Warren went on his regular rounds until about 2:00 A.M., when Miller went home. In the meantime, Warren had also taken the license number of the vehicle and checked it with the State Highway Patrol, who identified the appellant as the owner of the vehicle. Warren continued to check the car at fifteen or twenty-minute intervals. As he was driving toward the highway, at about 2:30, he heard a burglar alarm, which he recognized as coming from the market.

Warren drove toward where he had seen the Dodge parked. It was not where he had seen it previously, but about a half block away from his car he did see the Dodge, which "took out * * * at a high rate of speed," with its lights off.

Warren pursued the vehicle for about one half-mile and then called the Highway Patrol, giving them a description of the car and its license number. At 2:40, Trooper

Dallam received a radio call, describing the vehicle and its departure from Odessa. The Trooper went to the junction of Truman Road and Route 78 in Jackson County. At 2:57, the auto appeared and the Trooper stopped it. The driver identified himself as the appellant and produced his driver's license. The Trooper stated that appellant had on "a short Tee Shirt type, which was tight fitting and short sleeved and short waist; the shirt just did come to his waist." He described the shirt as black or dark blue and a lighter color in front. The Trooper also described that appellant was wearing what appeared to be good shoes, but they were muddy. Appellant told the Trooper that he had not been in Odessa.

After calling the Patrol, Warren went to the market and found that the plywood outer wall covering of a shed-like structure, referred to as a "bottle house," adjacent to the building proper had been loosened and partially removed and that within the shed a hole had been knocked through a concrete block wall into the store.

Warren notified the owner of the store and the Lafayette County sheriff, who came to the scene, the latter accompanied by Sergeant Closson of the Highway Patrol. Warren, the sheriff and Sergeant Closson observed numerous footprints in the rear of the market. They covered the footprints with boards to preserve them until daylight. The sheriff then went to Jackson County and placed appellant and the two other persons in the car when it was stopped by Trooper Dallam under arrest for investigation of the market burglary.

Appellant was taken to the Lafayette County jail. The sheriff removed his shoes and he and Sergeant Closson took them to the market at Odessa and compared the shoes with the footprints which they had found there. The shoes were placed in the prints and were found "identical in comparison." In addition, the brand name "Nunn-Bush" appeared on the heels of the shoes and such markings were found in the prints at the scene, along with the design which appeared on the heels of the shoes. The footprints were described as going toward and coming from the rear of the market in the direction of where the Dodge had been parked.

Nothing was taken from the store. No burglar tools were found in appellant's auto when it was stopped. Neither of the Murphys could identify appellant as one of the two persons whom they saw leave the Dodge auto.

Appellant's first contention on this appeal is that the evidence, above summarized, is insufficient to support a verdict of his guilt of the offense charged.

The evidence was, of course, wholly circumstantial. General guides for the testing of the sufficiency of circumstantial evidence have frequently been repeated. Considering the evidence and permissible inferences therefrom in the light most favorable to the state (State v. Watson, Mo.Sup., 350 S.W.2d 763, 766[1] ), "the facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence." State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282[2]. " * * * [C]ircumstantial evidence merely showing that the defendant had an opportunity to commit the theft charged and creating a suspicion of guilt without more is insufficient to make a submissible case." State v. Walker, Mo.Sup., 365 S.W.2d 597, 601[6]. See also: State v. Tracy, 284 Mo. 619, 225 S.W. 1009, 1010–1011[1]; State v. Freyer, 330 Mo. 62, 48 S.W.2d 894, 899[8]; State v. Brown, Mo. Sup., 291 S.W.2d 615, 619–620[8, 9]; State v. Watson, Mo.Sup., 350 S.W.2d 763, 768; State v. Boothe, Mo.Sup., 364 S.W.2d 569, 571[1–3].

Application of the rules is, of course, a case to case matter, with prior cases, based

on necessarily different facts, of minor authoritative impact. Therefore, while we have considered the cases cited by appellant in support of his contention here, none presents a factual situation identical to that of this case, which must rest basically upon its particular facts.

■ Here, the evidence clearly established the offense of burglary in the second degree and the question is the sufficiency of the evidence to connect defendant with the offense. We must disagree with defendant's contention that the evidence was insufficient to establish his presence in Odessa at the time of the offense. The similarity between the description of the attire of the person whom Wyman Murphy saw leave the defendant's auto near the trailer park and of the attire of defendant when the vehicle was stopped by the patrolman would permit the wholly reasonable conclusion that defendant was the person whom Murphy saw leaving the car. The fact that defendant was driving the vehicle, when, some twenty minutes after it had departed from Odessa under suspicious circumstances after having been parked for more than two hours, it was stopped by the highway patrolman would justify the inference that defendant departed in the vehicle in which he had arrived.

Defendant makes much of the fact that the Murphys saw only two persons leave the vehicle and that "Pete" Warren also saw only two persons in the auto during his brief pursuit after the burglar alarm sounded, but that there were three occupants when Trooper Dallam stopped the car. However, defendant's argument ignores the damaging testimony of Murphy regarding the appearance of the person whom he saw leaving the auto, which fitted the description of defendant as he appeared when stopped by the patrolman.

This evidence, of course, is not sufficient to connect defendant with the nexus of the offense. State v. Rogers, Mo.Sup., 380 S.W.2d 398, 400. At best, it would, as defendant suggests, only show opportunity to

commit the offense, not in itself sufficient to support a conviction.

■ There is the additional circumstance of the hasty departure of defendant's automobile, practically simultaneously with the sounding of the burglar alarm which undoubtedly signalled the entrance of intruders into the super market. However, that fact would not be adequate to warrant a finding of guilt absent some further connection between the occupants of the auto and the criminal act. Certainly, the circumstances of the departure of the defendant's automobile are far less incriminating than the drastic action of the suspected bank burglars in State v. Tracy, 284 Mo. 619, 225 S.W. 1009, where the circumstances of a suspicious departure were found insufficient to warrant a conviction.

Of course, if there is further evidence connecting defendant with the nexus of the offense, the circumstances above referred to do assume some added significance. If such further evidence is to be found, it must be in the footprint evidence.

The probative worth for identification of the accused of evidence of the correspondence between footprints at the scene of the crime and shoes worn by the accused is generally recognized. State v. Johnson, 316 Mo. 104, 289 S.W. 789. See Annotations: "Footprints as evidence," 31 A.L.R. 204, 35 A.L.R.2d 856. Here the testimony of the sheriff and the patrol sergeant regarding the correspondence between the footprints outside the super market and the shoes worn by defendant at the time of his arrest would support the conclusion that the footprints were those of defendant. The shoes and footprints corresponded not only as to size, but as to markings on the heels of defendant's shoes. The further fact that defendant's shoes were muddy at the time of his arrest also supports the conclusion that the footprints were made by defendant, there being testimony that the area in the rear of the market was muddy.

The evidence here differs greatly from the footprint evidence held without probative value in Heidelbaugh v. State, 79 Neb. 499, 113 N.W. 145. In that case the footprint evidence, a witness's statement of opinion that footprints were those of the accused, was based upon the opinion of the witness that the footprints were made by a size 7 or 8 shoe and the further opinion of the witness that the accused's shoes were about that size. Actual comparison of the defendant's shoe with the footprint produced a wholly uncertain conclusion. Finally, a large patch on the defendant's shoe was nowhere evident in the tracks found. Likewise, in State v. Freyer, 330 Mo. 62, 48 S.W.2d 894, the footprint evidence consisted of the testimony of a witness "that he observed the tracks and later looked at the appellant's feet while the two were standing talking to each other, and that to him the feet and tracks seemed similar in size, and the appellant's shoes appeared to have rubber heels." The court's conclusion, "This was valueless as evidence," is certainly not surprising. 48 S.W.2d 899[6].

Here, however, the evidence was based upon actual comparison of the footprints with defendant's shoes. The size and markings corresponded and the jury could conclude that defendant's shoes, while worn by defendant, made the footprints.

■ Defendant's suggestions that better evidence of the comparison of the shoes and prints might have been preserved does not deprive the evidence presented of probative value. Nor does the admitted fact that Nunn-Bush shoes are widely sold. See State v. Johnson, supra, where the heel marking "Goodyear Wingfoot" was common on shoes in the community. That fact did not deprive the marking in the identify-ing print of probative value. 289 S.W. 790–791.

Appellant also urges that the state failed to place the footprints at the scene of the breakin. Although the evidence does not locate the footprints at the exact point where the plywood outer wall was broken, it does locate them at the rear of the building, where the "bottle house" was located. That, together with the other facts and circumstances in evidence, was sufficient to relate the footprints to the breakin.

■ In our opinion, the evidence did present a submissible case.

■ Appellant's second assignment of error is predicated upon the court's failure to give the defendant's proffered instruction upon the burden of proof. The court did give a correct instruction on the burden of proof. Therefore, the denial of the instruction offered by appellant was not error. State v. Biddlecome, Mo.App., 250 S.W. 917, 918[2]; State v. Crow, 346 Mo. 306, 141 S.W.2d 66, 72[8–10]; State v. Chick, 282 Mo. 51, 221 S.W. 10, 16[13]; State v. Chamineak, Mo.Sup., 343 S.W.2d 153, 164 [23].

We find the matters of record specified in Criminal Rule 28.02, V.A.M.R., free from error.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.