# THE STATE v. SHIPLEY, Appellant.

## Division Two, February 3, 1903.

1. **Exclusion of Evidence: NO MOTION.** Where the only objection to certain evidence is that the question asked by the State is leading, and no motion is afterwards made to exclude the evidence on the ground of surprise, error can not be predicated on the admission of the evidence, after verdict.

2. ———; **FLIGHT.** The marshal came to the place where the shots were fired and inquired of the defendant who had shot and what for, and immediately defendant ran off, and was ordered to halt, and about this time the sheriff came up and also commanded defendant to halt, but he continued to run, and returned the fire of the officers. *Held,* that this evidence is not incompetent on the theory that defendant's running away was merely to escape the sheriff on whose daughter the assault was committed, but tended to show flight and a determination to escape, and it was for the jury to determine whether or not it did prove flight.

3. **Jury: CONDUCT: CALLS OF NATURE.** There is no impropriety in the sheriff (in this case the elisor) taking the jury, on their way to their room to consider of their verdict, to a proper place to answer the calls of nature.

4. ———: ———: **SEPARATION.** It is not a separation of the jury for one of them, accompanied by the officer in charge of the jury, to walk along the aisle of a lighted courthouse ten or twelve feet behind the file of the others on their way to the jury room.

5. ———: ———: **ELISOR: INTERFERENCE OF SHERIFF.** Where the jury was in charge of an elisor, there was no misconduct in the sheriff getting a lamp and preceding the jury to his office, which was used as the jury room, and in asking one of the jurors to hold the lamp while he unlocked the door.

6. ———: ———: **TALKING TO JURY.** An idle reference by the officer in charge of the jury, at night after they had retired to their beds in adjoining rooms, the doors of which were all open, that one of defendant's counsel was a good story teller, is an indiscretion, yet if it is plain that it in no manner contributed to the verdict, that verdict will not be set aside.

7. ———: ———: **FORMER STATEMENT BY JURY.** An offer to show on the hearing of the motion for a new trial that one of the panel "had read a newspaper report of a former trial and had said that if he had been on that jury he would have sent defendant to the penitentiary," is properly excluded, if there is no such ground mentioned in the motion, or if the name of the juror is not disclosed.

Appeal from Polk Circuit Court.—*Hon. W. W. Graves,*
Judge.

AFFIRMED.

*Johnson & Sea* and *B. J. Emerson* for appellant.

(1)    The separation of the jury after the trial and
final submission of the cause to them, when returning
from the courtyard and passing through the courtroom
and anteroom and on the stairways on their way to the
jury room, especially when a part of the jury was led
by Franklin, the disqualified sheriff, was error, and no
evidence should have been admitted on the part of the
State to show that no improper influences were brought
to bear upon them while so separated.   Secs. 2629 and
2688, R. S. 1899; State v. Howland, 119 Mo. 419.    (2)
The testimony of Franklin and Marshall should have
been excluded from the jury as irrelevant, and not ad-
missible to show flight except from the pistol in the
hands of Franklin as a matter of self-preservation at the
time.    State v. Fairlamb, 121 Mo. 137.    (3)    The court
should have granted defendant a new trial because of
the action of the elisor, in discussing the speech made by
defendant's attorney in the case when he was in charge
of the jury, at the boarding house, after the cause was
finally submitted to them and he had been sworn.   Sec.
2629, R. S. 1899.

*Edward C. Crow,* Attorney-General and *C. D. Co-
rum* for the State.

(1)    The testimony did not show a separation of
the jury and the court committed no error in refusing
to grant a new trial on this ground.   To hold, under
such evidence, that this was such a separation as would
give the defendant a right to a new trial, would lay down

Vol 171 mo—35.

a doctrine that would set aside all verdicts. State v. Orrick, 106 Mo. 111; State v. Howland, 119 Mo. 419; State v. Rush, 95 Mo. 204; State v. Washburn, 91 Mo. 573. (2) The evidence shows that Franklin did not speak to any of the jurors, except to request one of them to hold the lighted lamp while he unlocked the door. And when the door was opened, he placed the lamp upon a table in the room and left without any communication with any of the jurors. Nothing whatever was said about the case on trial. The court would not have been warranted in granting a new trial for this conduct. State v. Degonia, 69 Mo. 485. (3) The defendant offered to show that one of the jurors in this case had read a synopsis of the last trial in the Herald and had said "that if he had been on the jury, he would have sent the damned rascal to the penitentiary." No juror was named in the offer, and the court, probably for that reason, excluded it; but the defendant did not raise this point in his motion for a new trial, and it can not, therefore, be considered here. State v. Wright, 152 Mo. 57; State v. Laycock, 141 Mo. 274.

GANTT, P. J.—An information was filed in the circuit court of Polk county by the prosecuting attorney of that county, charging that defendant on the 2nd day of November, 1901, at said county, in and upon Fred Moore and May Franklin, unlawfully, feloniously, on purpose and of his malice aforethought, did make an assault, and did then and there on purpose and of his malice aforethought feloniously shoot at the said Fred Moore and May Franklin with a certain pistol loaded with gun-powder and leaden balls, etc.

The defendant was duly arraigned, and entered his plea of not guilty. The cause was continued on a proper application and was finally tried in May, 1902, and defendant was convicted of a felonious assault and his punishment assessed at two years in the penitentiary. He appeals to this court. As one of the parties

at whom defendant is charged to have shot, to-wit, Miss Franklin, was a daughter of the sheriff of said county, and as there was no coroner, at the time, of said county, the circuit court appointed an elisor to summon and take charge of the jury.

I.   The information was in all respects sufficient and indeed it is not challenged in this court. The instructions likewise are free from error and no objections are urged against them. The evidence was sufficient to sustain the verdict.

II.   Errors are assigned on the admission of testimony on the part of the State and on the misconduct of the elisor in permitting the jury to separate after the argument, and in discussing the case with the jury while under his charge.

These we will now examine in their order.

The defendant complains that the court erred in admitting the evidence of Len Marshall to the effect that he was the city marshal of Bolivar on the night of the alleged assault, and that immediately after the shot was fired he went at once to the place where the shot was fired (Moore's butcher shop) and when he reached there defendant was standing in front of the shop on the sidewalk, and when he reached him, he inquired at once of defendant what was the matter or who shot, and that just as soon as he addressed him, the defendant ran off, and that the sheriff, Franklin, and the marshal pursued him and shot at him and defendant returned the fire. He escaped then, but later that night was apprehended at his father's house.

The sheriff testified that when he reached the scene, defendant was running and the marshal was ordering him to halt, but he ran on and the sheriff also commanded him to halt, and he continued his flight, and thereupon the sheriff shot at him, and defendant returned the fire and continued his flight. The point is made that this evidence was erroneous because it did not tend to prove flight, but that defendant merely ran to escape from the sheriff.

On two grounds we think the point is not tenable. In the first place, no objection was made to the evidence of the marshal until after he had detailed the flight, and then only on the ground that the question of the prosecuting attorney to this witness was *leading*. No motion was subsequently made to exclude it on the ground of surprise. For these reasons alone error can not now be predicated on this evidence.

But, secondly. The evidence tended to show flight and a determined purpose to escape from the officers when ordered to halt. The defendant knew their official character, and it was his duty to submit to the arrest. The extent of his flight was for the jury to weigh as a fact in making up their verdict. He had the full benefit of his explanation in his own testimony. The only objection to the sheriff's evidence was that it did not tend to prove flight, and it was competent for that purpose.

It necessarily follows that no error was committed in refusing an instruction asked by defendant that the jury would disregard the testimony of Marshall and Franklin.

We are brought now to the contention that the jury were allowed to separate after the argument and after the case had been finally submitted to them.

The facts appear to be that the argument was concluded late at night and, before retiring to the juryroom which was in an upper story above the courtroom, the jury requested the elisor to permit them to attend to a call of nature, and he directed them to remain in their places until the crowd had left the courtroom. After the people generally had left, he took the jury down into the courthouse yard, and finding two or three young men loitering there he directed them to leave, which they did, and then the jurors standing near each other and in the presence of the elisor relieved themselves, and he then started with them back into the still lighted courtroom, cautioning them to keep together. They entered the courtroom at the south door walking in a file and following each other along an aisle leading

to the north door through which it was necessary for them to go to reach the stairway leading above to the juryroom. One of the jurors, Mr. Frieze, was slower than the others and he was the last to come into the south door, the sheriff urging him to walk faster. The juryroom was the regular sheriff's office and the sheriff had the key to it. It appears that while the elisor and the jury were out in the yard, the sheriff prepared a lamp and when the jury came in, without speaking to them, he preceded them with the lamp in his hand along the aisle and up the steps to his office or the juryroom, unlocked the door, went in, and placed the lamp on a table and came out, stopped and showed the elisor how to fasten and unfasten the door and then returned immediately to the courtroom where defendant's counsel were still sitting. The evidence demonstrated that the south door of the courtroom was just thirty-four feet from the north door, and the stairway referred to commences right at the north door, inside the north door of the courthouse. The evidence shows that when the last of the jurors in front passed to the stairway, Frieze, the belated juror, and the elisor were not exceeding six or ten feet behind them. The proofs affirmatively demonstrated that defendant's counsel, who were in the lighted courtroom and were watching for any irregularity or misconduct, saw no one speak to the jury, and the jurors and the sheriff and the elisor all testify that the sheriff, Franklin, did not speak to any of the jurors further than to request one of them to hold the lamp while he unlocked the door to the jury room.

There was no impropriety whatever in the elisor taking the jury out in the courtyard to answer the demands of nature. There is not the slightest evidence that they separated out there. Our county courthouses are seldom provided with the modern water-closets in the jury rooms and the sheriff or the officer in charge of this jury was from necessity compelled to take the jury in a body, or to place them in their room and take them one or two at a time to a closet, and the course he pursued was preferable to the latter, which we have

, ruled is not a separation in the meaning of our statute, even though the jurors had finally retired to consider their verdict, as this latter fact does not change the rule. [State v. Washburn, 91 Mo. loc. cit. 574; State v. Collins, 86 Mo. 245; State v. Payton, 90 Mo. 220; State v. Sprague, 149 Mo. loc. cit. 425.]

Neither was it a separation for the twelve jurors to walk along the aisle in the lighted courtroom in the presence of defendant's counsel, even though the last man was some ten or twelve feet in the rear of his companions in the presence of the officer. There was not only no attempt to approach the jury, which the counsel for defendant, with all their watchfulness, could discover, but, we may say under the facts, no opportunity for any one to tamper with them.

To hold that because the regular sheriff, who had the keys of his office, which on this occasion was used as a jury room, got a lamp and preceded the jury and unlocked the door and left the lamp in the room and immediately retired, was misconduct, would be to ignore all proper distinctions and the dictates of common sense. There was no separation of the jury and it is plain that sheriff Franklin's conduct in the circumstances did not infringe the command of the statute or the direction of the court.

It remains to notice in this connection the charge in the motion for new trial, as amended on the hearing, that the elisor discussed with the jury the arguments of counsel. As to this assignment we glean that owing to the late hour of the night at which the trial was concluded, the jury did not reach a verdict, and requested to be allowed to retire, and as there were no beds or cots in the sheriff's office, the elisor took them to a house in which there were several rooms all opening into each other and containing beds; that the elisor locked the only stair door leading up to these rooms and placed the jurors in them by themselves and as the night was very warm opened the windows and connecting doors, and took a bed or cot in the hallway himself, and they all retired. It would seem that during the

argument one of the learned counsel for defendant told several amusing anecdotes to point his argument, and after the jurors had retired they were laughing over one of these stories, and the elisor remarked from his bed in the hall that the counsel was a good hand to tell stories. The most rigid examination failed to disclose any discussion of the case, or the weight of the arguments, on either side, or any reference to the evidence or to the parties. While it was improper for the elisor to make any remark to the jury, it is so plain that this idle reference to an amusing anecdote in no manner contributed to the verdict, but at most was harmless indiscretion, we are unwilling to set aside a verdict against the integrity of which there is otherwise not a suspicion. The trial court took this view of it, and we think he properly refused to set aside the verdict on this ground.

The offer to show on the hearing of the motion for a new trial "that one of the panel had read a newspaper report of a former trial, and had said if he had been on that jury he would have sent defendant to the penitentiary," was properly excluded, because there was no such ground mentioned in the motion, and because, moreover, the name of the juror was not disclosed.

We have gone patiently through the record and in our opinion the defendant had a fair trial and there is no reversible error in the record.

The judgment is affirmed. *Burgess* and *Fox, JJ.*, concur.