## THE STATE v. MURPHY, Appellant.

### Division Two, March 5, 1907.

1. **WITNESS: Impeachment: Immaterial Matters: This Case.** A witness can not be impeached on immaterial matters. In this case—a prosecution for robbery—the theory of the defense was that the prosecuting witness, a married woman, had on previous occasions been intoxicated and had lost money belonging to her husband.   When her husband was on the stand, he was asked if his wife had not lost money before and if he had not told her that if she did not stop drinking and going out and losing his money, he would leave her, which he denied.   He was then asked, "Did you not tell Mrs. Baker that?" which he denied.   Mrs. Baker was then called as a witness for defendant and was asked if some months prior to the robbery she had a conversation with the husband about his wife.   *Held*, that the court properly sustained an objection to the testimony, since it was an attempt to impeach a witness on an immaterial matter.

2. **REMARKS OF COUNSEL: No Exceptions.** Where defendant does not except to alleged improper remarks of the prosecuting attorney in his argument to the jury, nor to the failure of the court to reprimand him severely enough, the alleged improper remarks cannot be reviewed.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds*, Judge.

AFFIRMED.

*Claiborne & Fish* for appellant.

(1)   If the prosecuting witness had been drunk before and had lost her husband's money, it was proper for the jury to know what kind of witness she was and whether she was to be believed in this case. This evidence should have gone to the jury, not only to impeach the husband, Robert Craig, but to also show the character and habits of the prosecuting witness. (2) The remarks of the circuit attorney, and the declaration of the court as to the law governing his remarks, were such as to seriously prejudice the rights of this defendant. State v. Weaver, 165 Mo. 1; People v. Hendrickson, 53 Mich. 535.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1)   In the direct examination of Mrs. Ella Baker defendant's counsel asked certain questions about what Mr. Craig said about his wife. On the State's objection, this irrelevant evidence was excluded; and the defendant saved his exceptions. Defendant's counsel did not make any statement of what he expected to prove by this witness; neither did he make any offer of proof; hence, the alleged error cannot be considered. State v. Martin, 124 Mo. 514; State v. Hodges, 144 Mo. 50. (2)   The assistant circuit attorney was not guilty of misconduct in his closing argument, when he referred to the failure of the defendant to place John Moore on the witness stand. The trial court withdrew from the jury, and stated that he had no right to state where Moore was, but permitted the remark to be made that Moore was not used as a witness by the defense. This was perfectly proper argument, as this court has often held. State v. Emory, 79 Mo. 463; State v. Parker, 172 Mo. 191; 1 Thompson on Trials, sec. 689.

GANTT, J.—At the October term, 1905, of the circuit court of the city of St. Louis, the defendant and one. John Moore were charged by information of the circuit attorney, duly verified, with robbery in the first degree of Mrs. Henrietta Craig. The information is in the form approved by this court in State v. Lamb, 141 Mo. l. c. 301. A severance was granted and the defendant was duly arraigned and tried by a jury and convicted, and his punishment assessed at five years in the penitentiary. After unsuccessful motions for a new trial and in arrest, the defendant was sentenced in accordance with the verdict, and from that sentence appealed.

On the part of the State the testimony tended to prove that the prosecuting witness was the wife of Robert Craig, and lived with her husband at No. 6113 Pennsylvania avenue, St. Louis. The defendant was a white man, and Moore was a negro; Mrs. Craig knew both of them. On the 20th of November, 1905, Mr. Craig received his pay from the St. Louis Blast Furnace Company, and went home about dark, and gave his wife $18.85, with which to pay some store accounts. She went out alone, paid some of her bills, purchased a little gin for her husband, and started home with $9.85 in her pocket. As she neared home, she saw two men in the darkness, following her; and when she got into her yard they grabbed her. They grabbed her by the arms, put their hands over her mouth, and took her towards the closet in the back yard. After a scuffle with her, she was thrown to the ground and one of her assailants got his hand in her pocket and took out her pocket book, in which she had a five-dollar bill, two two-dollar bills and eighty-five cents in money. Hearing the noise, her husband was aroused from his bed, between nine and ten o'clock, opened the door and came out. Mrs. Craig was so badly frightened that she could not speak for a while, and did not know what became of

the two men.  When Mr. Craig opened the door, he saw
his wife lying on the ground, and the negro John Moore
standing near her feet, and saw the defendant running
out of the closet.  Both Moore and the defendant ran
rapidly out of the yard, one of them saying, "Mr.
Craig, we have come to bring your wife home." Mrs.
Craig immediately complained to her husband that she
had been robbed of her pocket book, and the next morn-
ing he found the empty pocket book in the closet.  Mrs.
Foster, a neighbor, testified to seeing Mrs. Craig start
home that night, and then saw the defendant and John
Moore walking after her about a half block behind her.
A short time after the alleged robbery, John Moore was
arrested at the Wallingford saloon.  The defendant was
arrested at the Wauge saloon, and had twenty-five cents
in his pocket; he stated to the officer that he did not take
any five-dollar bill off of Mrs. Craig, but the bill he had
that evening was given to him by Jim Pettus to have it
changed.  Wallingford testified that the defendant was
in his saloon that evening and wanted to buy two drinks
on credit; that defendant left the saloon a little before
ten o'clock, and about eleven o'clock he and Moore re-
turned together, ordered beer, and the defendant paid
for it, handing Mr. Wallingford a five-dollar bill.

The defendant's evidence tended to show that Mrs.
Craig was intoxicated on the evening in question; that
she stopped in front of a saloon and sent word by one
Breckenridge to the defendant to come out; that she
told defendant that she was drunk and wanted him to
take her home; that defendant, being well acquainted
with her, took hold of her and started with her, but soon
found that he could not take her by himself; that he
called to some negroes to help him, and that John
Moore came; that Mrs. Craig fell in the yard and
Moore picked her up to carry her, but she objected to
going home, saying she was afraid her husband would
beat her if she came home in that condition; that when

they reached her home Mr. Craig opened the door and asked who was there, and defendant said, ''We brought her home; she is drunk.'' To which Mr. Craig replied, ''All right, boys, thank you; I'll treat you all for that.'' Defendant denied taking any money from Mrs. Craig and denied that Moore took any from her. Moore did not testify. There was evidence to the effect that the defendant was a dairyman and enjoyed a good reputation for industry and honesty; there was also evidence that Mrs. Craig was badly intoxicated that night.

In rebuttal, two police officers, who saw Mrs. Craig at eleven o'clock that night, and to whom she made complaint of the robbery, testified that she was perfectly sober, and there was no evidence whatever of intoxication. Mr. Craig, Mr. Wallingford and Mrs. Foster also testified that Mrs. Craig was not intoxicated.

The court instructed the jury of its own motion and the defendant asked no instructions. No objections were taken and saved to the instructions given by the court and they are not before us for review. Two grounds, only, are relied upon for the reversal of the judgment. These are, first, that the court refused to allow legal and competent evidence on the part of the defendant to be introduced, and, second, improper remarks to the jury by the assistant circuit attorney in his argument.

I. It was a theory of the defense that Mrs. Craig had on previous occasions been in an intoxicated condition, and had lost money belonging to her husband. When Robert Craig, her husband, was on the stand, he was asked if his wife had not lost his money on several occasions before this, and he denied that she had. He was then asked if it was not a fact that in May prior to the robbery she had lost money, and if he did not tell her that if she did not stop drinking and going out and losing his money he would leave her and go to the ''Soldier's Home,'' and he flatly denied that she had lost his

money, or that he had so told her. He was then asked, "Did not you tell Mrs. Baker that?" and he denied doing so. He was then asked if he had not told other witnesses the same thing, and he denied doing so. On the part of the defendant, Ella Baker was called as a witness, and was asked if in May last she had a conversation with Mr. Craig about his wife; to this the prosecuting attorney objected on the ground that it was immaterial and that impeachment could not be had upon an immaterial matter; the objection was sustained and the defendant excepted. And it is this ruling that is made the basis of the motion for new trial on the ground that legal testimony was excluded on behalf of the defendant. We think the ruling of the court was correct. What Craig might have said to his wife six months before the alleged robbery, or what he said to Mrs. Baker in regard to his wife, was wholly irrelevant to the issue on trial. It is too clear for the citation of authority that a witness cannot be impeached on immaterial matters.

II. It is assigned as error that the prosecuting attorney, in the course of his argument, said, "Where is Moore? Moore is in this building." To which remark counsel for the defendant objected, and asked that the counsel be admonished; thereupon the prosecuting attorney said; "I say it for this reason, because the defendant, Murphy, says that he got that five dollars from Moore. Moore is within reach of process, and here in this building, and could have been placed on the stand." The court thereupon said, "That point is objectionable, you may draw such inference as you please as to why they did not put him on the stand to explain why he gave this money to this man, but where Moore is, or what his condition may be, is not to be given to the jury, because it is not in evidence." This ended the colloquy between the court and the counsel, and no exception was taken to the ruling of the court on the ground that his

reprimand to the prosecuting attorney had not been severe enough, or his caution to the jury more pointed. For aught that appears the counsel for the defendant was entirely satisfied with the ruling of the court. Certain it is that no exceptions were taken or saved at the time, either to the remark of the prosecuting attorney or to the action of the court, and consequently there is nothing before us for review on this point at this time. The question of the defendant's guilt under the instructions of the court was one for the jury, and we find no reversible error in the record and the judgment is accordingly affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.