THE STATE v. ELMER WOOD, Appellant.—11 S. W. (2d) 1040.

Division Two, December 12, 1928.

*B. L. Rhinehart* and *Lz Banta* for appellant.

542

*Stratton Shartel,* Attorney-General, and *H. H. Blair,* of counsel, for respondent.

HENWOOD, C.—An information was filed in the Circuit Court of Douglas County, in which appellant was charged with the unlawful manufacture of "moonshine." Upon trial, the jury returned the following verdict: "We the jury find the defendant Elmer Wood guilty as charged in the information but cannot agree on punishment." The court fixed his punishment at imprisonment in the penitentiary for two years, sentenced him accordingly, and he appealed.

The State's evidence shows that, sometime in June, 1927, a deputy sheriff, residing in the northeast part of Douglas County, located a still in that vicinity and telephoned the sheriff to that effect. The sheriff and two other deputies went to that section of the county and were directed to "a very brushy place on a rough hillside," where they "struck a path that had been traveled right fresh." After following this path about 200 yards, they saw the still and appellant and another man nearby. The other man was Warren Perkins, but the officers did not know him at that time. Upon discovering the approach of the officers, appellant and Perkins "went off on high" and fled in opposite directions. Appellant was halted and arrested. Perkins escaped, first, to Wrothwell's store, not far away, and, later, into Arkansas. Two or three months thereafter, he returned to Douglas County, was arrested, and testified for the State. The still was "in full blast, fired up with pine knots, with whiskey running out into a fruit jar." Three or four gallons of whiskey and seven or eight barrels of mash were found near the still. The mash and most of the whiskey were "poured out," the barrels and the boiler destroyed, and the worm and condenser and

some of the whiskey were preserved for the trial. The sheriff identified these articles at the trial and explained how the different parts of the still were connected when he found it in operation. The jug containing the liquor was passed to the jury for their inspection. One of the sheriff's deputies said it was "whiskey," and that it was "intoxicating." It was referred to as "whiskey," throughout the trial, by counsel and witnesses on both sides of the case, and it is conceded by appellant, in his brief, that it was "moonshine whiskey." When arrested, appellant denied any connection with the still. He said he was making ties near there, and Perkins invited him "to come down and get a drink." He also said: "I am going to help you catch Perkins, and if he don't say it is his still, I will beat him half to death." A short while later, the officers, with appellant in their custody, stopped at Wrothwell's store, looking for Perkins. It developed later on that Perkins had gone to this store, made some change in his clothes, and was sitting on a bench in front of the store at that time, but appellant "never said a word about Perkins" at the store. Perkins, testifying for the State, said the still belonged to Omer Collins, and that he and Omer Collins and appellant had been making whiskey there for about two weeks. They had made three "batches" of whiskey, the first being taken by Omer Collins, the second by him (Perkins), and the third, seized by the officers, belonged to appellant. Each of them bought the materials for his own "batch" of whiskey, and they "swopped work." He was not promised immunity by anybody, but gave this testimony because "them fellows was trying to get Elmer Wood out of it and was laying it all on to me." On cross-examination, he said Omer Collins told him that the still was given to him (Omer Collins) by Perkins's brother after he (Perkins's brother) was "arrested and convicted." He admitted that he had made and sold whiskey prior to the time in question. And he also admitted that he and Jesse Woods moved the still to the place where the officers found it. He said they "wired it on a pole and carried it, taking it to Omer."

Appellant, testifying in his own behalf, said he had no interest in the still and no part in the manufacture of any liquor by use of the still. He had been making ties for about six months in the woods "about a half a quarter" from the still. Perkins had bought a car from him and had no title to it, and, on the day of his arrest, he went down to the still to get a drink and talk over the matter, at Perkins's request. He explained to the officers how he happened to be there, and said he did not tell them it was Perkins's still, and did not see Perkins at Wrothwell's store after his arrest. He had visited the still a few days before that time with Louis Collins, when they went there to get a drink. On cross-examination, he said he

ran when he saw the officers approaching the still ''to keep from getting shot; thought running would beat standing.''

One of appellant's witnesses testified that he had seen Perkins operating the still alone at the place where the officers found it. Another one said that Perkins offered him ten dollars to testify against appellant. And others said Perkins told them he felt sorry for appellant because he (appellant) had nothing to do with the still. The witness Ernie Collins testified that he saw this still once ''before it was moved down where the officers found it;'' that, while driving home from town one night, Warren Perkins stopped him along the road and ''passed some old tank in the back end of the truck.'' Upon objection by the State, the court excluded further proof by this witness that Perkins stopped him and put a still on his truck, and that this witness hauled the still ''down near to where it was found by the officers.'' This witness further testified that he hauled a load of ties for appellant a day or two before he was arrested.

Rebuttal testimony for the State and for appellant was in conflict as to whether or not any ties were cut or made in the woods where the still was found, at the time of appellant's arrest or shortly prior thereto.

I. Appellant contends that the trial court erred in excluding the testimony of the witness Ernie Collins to the effect ''that sometime before the still was captured Warren Perkins stopped this witness and put a still on his truck, and that this witness hauled the still down near to where it was found by the officers.''

There is no merit in this contention. As shown in the above recital of the evidence, Perkins admitted his participation in the operation of the still and in the manufacture of the whiskey in question. He also admitted, on cross-examination, that he moved or assisted in moving the still to the place where it was found by the officers. Having thus admitted his connection with the moving and setting up of the still, and with the operation thereof, it is immaterial, so far as the issues of this case are concerned, whether he (Perkins), or, as he said, Omer Collins, or some other person owned the still; or when, or by what means, he moved it to the place where it was used in the manufacture of whiskey. And, in making this contention, learned counsel for appellant apparently overlook the fact that the court permitted them to prove by the witness Ernie Collins, as above stated, that Perkins stopped this witness along the road one night and ''passed some old tank [the still] in the back end of the truck.'' In shutting off further inquiry at this point, as to

an immaterial matter, the court excluded none of the proffered testimony of this witness except as to how far the still was hauled in the truck and as to the place where it was unloaded. It plainly appears, therefore, that, in the admission of testimony of this character, the rulings of the trial court were extremely liberal to appellant, rather than prejudicial. There was nothing in the proffered testimony which tended to impeach Perkins nor to rebut his testimony; but, even so, it is a well-established rule that witnesses cannot be impeached, nor their testimony rebutted, as to immaterial matters, except in instances where the immaterial testimony is prejudicial, and is voluntarily introduced by the opposite party upon the theory that it is material. That was not the situation in this instance. [State v. Long, 257 Mo. 199, 223, 165 S. W. 748, 756; State v. Bunton, 280 S. W. 1040, 1042.]

II. It is also contended that Instruction 1 is broader than the information and the evidence, and that the court erred in giving it, because it authorized the jury to convict appellant upon a finding that he manufactured "hootch, moonshine, corn whiskey," whereas, by the information, he is charged with the manufacture of "moonshine," and is shown by the evidence to have manufactured "whiskey."

Under the statute here involved (Sec. 21, Laws 1923, p. 242), it is a felony to illegally manufacture any kind of *whiskey*. [State v. Wright, 280 S. W. 703; State v. Black, 289 S. W. 804.] It is true, as appellant contends, that the words "hootch," "moonshine," "corn whiskey," as used in this statute, are no longer held to be synonymous, though we did so hold in the case of State v. Brown, 304 Mo. 78, 81, 262 S. W. 710, 711. But, in the case of State v. Pinto, 279 S. W. 144, 147, wherein the opinion in the Brown case was modified, WHITE, J., said: "As a matter of common knowledge, moonshine is a name applied to other liquors than corn whisky. It is a broader term, and includes the corn whisky denounced by the statute. The same may be said of 'hootch.' That is what we should have said in the Brown case as our understanding of the legislative intention. All illegal corn whisky is moonshine, but all moonshine is not corn whisky." As already indicated, the appellant is charged with the unlawful manufacture of "moonshine," and the evidence merely shows that he unlawfully manufactured "whiskey," without explanation as to its kind or character. Under the evidence, the jury could not have been confused nor misled by Instruction 1, nor could appellant have been prejudiced thereby. And, in view of our construction of the words "hootch," "moonshine," "corn whiskey," that is, that the words "hootch" and "moonshine" were intended,

by the framers of the statute, to apply to any kind of whiskey illegally made, including "corn whiskey" so made, it cannot be said that this instruction, in legal effect, was broader than the information and the evidence, in authorizing a conviction in this case upon a finding by the jury that appellant unlawfully manufactured "hootch, moonshine, corn whiskey." It follows that no prejudicial error was committed in giving this instruction. In connection with the Pinto case and other cases above cited, see also, State v. Griffith, 279 S. W. 135; State v. Brown, 285 S. W. 995; State v. Knight, 300 S. W. 719.

III.   Finally, appellant complains of the action of the trial court in permitting the deputy sheriff to tell the jury that "they could find defendant guilty and the court assess the punishment," in response to the jury's inquiry, through the deputy sheriff, as to whether or not that could be done.

As to what occurred in that connection, the record reads as follows:

"At request of defendant's counsel, the following was made of record in connection with matters which took place in the jury room immediately before the foregoing verdict was returned into court:

"By The Court:

"During the deliberations of the jury in the jury room, the foreman requested the deputy sheriff in charge of said jury to inquire of the court if they could find defendant guilty and the court assess the punishment.   Whereupon the court authorized the sheriff in charge of said jury to tell the jury that that could be done.   Whereupon the jury returned into court the following verdict: 'We, the Jury, find the defendant, Elmer Wood, guilty as charged in the information, but cannot agree on the punishment.'   Signed by 'J. G. Lethco, Foreman.'   Whereupon the court fixed the punishment at two years in the State Penitentiary.

"By Mr. Banta:

"Defendant, by his counsel, objects to the court permitting the deputy sheriff to speak to the jury and to instruct the jury out of the absence of the court and absence of the defendant and defendant's counsel.

"By The Court:  Objection overruled.

"The defendant, by his counsel, duly objected and excepted at the time."

This complaint does not challenge the correctness of the oral instruction given by the court to the jury, through the deputy sheriff, nor the integrity of the verdict, but merely the method employed by the court in conveying to the jury the information requested by them, through their foreman.   It does not appear, nor is it even claimed by appellant, that anything was said or done by the deputy sheriff

other than that he delivered to the jury the court's message or oral instruction, as he was directed to do by the court. Manifestly, the message or instruction in question was given to the deputy sheriff, for delivery to the jury, in open court, and in the presence and hearing of appellant and his counsel. It was entirely proper for the jury to request such information, and for the court to give it, when so requested. Furthermore, it should not even be suggested that the deputy sheriff might have said or done something to influence the verdict, because, obviously, the jury had already agreed on their verdict, as to appellant's guilt of the offense charged, at the time they communicated with the court through the deputy sheriff. Subject to certain statutory limitations, the conduct of trial proceedings and the handling of juries rests very largely in the sound discretion of the trial court. It is the duty of the sheriff and his deputies to assist the trial court in such matters, and also to act as messengers for the court in communicating with the jury while the jury are engaged in deliberating on their verdict. And, while it is the better and safer practice, and the practice ordinarily followed, for the court to give all of its instructions to the jury, either written or oral, in open court and with the jury before the court at the time, we have no hesitancy in saying that, under the circumstances above mentioned, the court did not abuse its discretion in delivering to the jury, through the deputy sheriff, the information or instruction requested by the jury. To rule otherwise on this complaint would be, as said by GANTT, P. J., in the case of State v. Shipley, 171 Mo. 544, 550, 71 S. W. 1039, "to ignore all proper distinctions and the dictates of common sense." See also, State v. Daly, 210 Mo. 664, 681, 109 S. W. 53.

The information is in approved form, the verdict is responsive to the issue presented to the jury, the evidence is amply sufficient to support the verdict, and our examination of the record discloses no error.

The judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *White, P. J.,* and *Walker, J.,* concur; *Blair, J.,* not sitting.