STATE of Missouri, Respondent,

v.

Harry James CHAMINEAK, Appellant.

No. 48062.

Supreme Court of Missouri,

Division No. 2.

Feb. 13, 1961.

No appearance for appellant.

John M. Dalton, Atty. Gen., Richard W. Dahms, Sp. Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Harry James Chamineak was charged by indictment with murder in the second degree of Harold Hogan, and was also charged under the Habitual Criminal Act with one previous conviction. Upon a finding of guilty of manslaughter by the jury he was sentenced by the court, pursuant to § 556.280, as amended, Laws of Missouri 1959, S.B. No. 117, § 1, to confinement in the penitentiary for a term of seven years. He has appealed from the ensuing judgment. This is a second appeal. See State v. Chamineak, Mo.Sup. 328 S.W.2d 10. Defendant has filed no brief. Our review extends to the essential record and the allegations of error in the motion for new trial, of which there are forty-one. Supreme Court Rules 27.20 and 28.02, V.A. M.R.

Agnes Hogan (later married to defendant) obtained a divorce from Harold Hogan on July 1, 1957, and as a part of the property settlement in connection with the divorce received title to a house at 4226 Pleasant Street (subject to an FHA loan) and was awarded the sum of $3,900 as her share in a business she and her husband had owned. During the divorce proceedings the Federal Government recorded a lien of approximately $2,000 against the house to recover taxes allegedly withheld by Harold from the salaries of employees but not paid by him to the government. On the evening of March 1, 1958, Sam Bass, Agnes' stepfather, and the defendant, who also lived at 4226 Pleasant Street, went to a restaurant operated by Harold's brother Hieatt to see if Harold worked there so that if he did the fact could be reported to the Department of Internal Revenue. Sam told Lois Gallagher, the waitress, that he was looking for Harold and that he was going to kill him. Lois later told Hieatt that Sam had made threats against Harold. Hieatt then met Harold at a tavern about a block away and after having a few drinks they were joined by Francis Steingrubey, the operator of a nearby gasoline service station. The three left together and visited

two other taverns looking for Sam, but failed to find him. They then drove to 4226 Pleasant Street, and Hieatt went to the door and knocked. According to Hieatt the defendant answered the door, and when he asked to see Sam the defendant said "He isn't here, but I'll talk to you myself." Hieatt testified that he then went back to the automobile without further conversation. Defendant's version was that he told Hieatt that Sam lived upstairs and Hieatt asked if he (defendant) was the one who was with Sam at the restaurant. When he answered that he was, Hieatt said, "Well you tell Sam to come on outside and * * * you come out also. * * * We will get both of youse," and that "you are either coming out or we are coming in." Hieatt then returned to the automobile and the three drove around the block and came back to approximately the same place. A few minutes later the defendant came out of the house carrying a shotgun. He walked to the automobile and asked Harold if he was looking for trouble. When Harold said "no," according to Hieatt and Steingrubey, defendant shot him in the head and killed him. Defendant's version was different. He testified that he went to the automobile and asked Harold "why do you want to give us trouble for?" and "why don't you guys get away from here?" Hieatt then said, "Now is your chance Harold,". and Harold said, "I'll get him." Defendant said that he "looked at Harold and I seen this gun coming up" so he jumped back and fired. He said that he shot because he did not want Harold to shoot him. An unloaded .22 caliber pistol was found later in the Hogan automobile, and at the morgue a blackjack was found in Harold's left trouser pocket.

Defendant first contends in his motion for new trial that the trial court erred in overruling his motion to dismiss the indictment under the doctrine of res judicata. It appears that defendant was charged with shooting Hieatt with intent to kill, and that upon trial a jury returned a verdict of not guilty. Defendant asserts that the theory of the State in that case was that in a "matter of seconds" after he shot Harold he wilfully and with malice aforethought shot Hieatt, and that the theory of defendant was that he shot both Harold and Hieatt in self-defense after Harold pulled out a gun and threatened to kill him or do him great bodily harm. Defendant asserts that the "facts and matters" put in issue and decided against the State in the previous case pertaining to self-defense are the same facts and matters which the State attempts to put in issue in the present case which the doctrine of res judicata forbids.

" 'The doctrine of res judicata by which a fact or matter distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties, is applicable to judgments in criminal prosecutions. * * * The doctrine of res judicata, as applied to criminal cases, is subject to the same limitations as apply in civil cases. And clearly, there must be an adjudication of the fact or issue in question. A judgment in a criminal case operates as res judicata only with respect to the issues of law and fact actually decided and those necessarily involved in the result.' " State v. Humphrey, 357 Mo. 824, 210 S.W.2d 1002, quoting from 15 Am.Jur. Criminal Law § 367, Cumulative Supplement. See also 50 C.J.S. Judgments § 754; Vol. I Wharton's Criminal Law and Procedure, Anderson, § 174; Sealfon v. United States, 332 U.S. 575, 68 S.Ct 237, 92 L.Ed. 180; Harris v. State, 193 Ga. 109, 17 S.E.2d 573, 147 A.L.R. 980. The application of the doctrine of res judicata "depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial." Sealfon v. United States, supra [332 U.S. 575, 68 S.Ct. 239]. In this case defendant admits that the shot which killed Harold was not the one which wounded Hieatt. Assuming that the record before us is sufficient to establish that in a previous case the defendant was acquitted of the charge of shooting Hieatt with the intent to kill, and that a defense in that trial was that of self-defense, the determination of that issue is not necessarily

essential to the result there reached, and the verdict of guilty in this case may be sustained without necessarily contradicting any fact determined by the former judgment. Vol. I Wharton's Criminal Law and Procedure § 174 at p. 410; 15 Am.Jur. Criminal Law § 367, Cumulative Supplement. In State v. Barton, 5 Wash.2d 234, 105 P.2d 63, it was held that the issue of alibi raised as a defense in a previous prosecution, in which a judgment of acquittal was had, was not res judicata in a subsequent prosecution for a separate offense committed as a part of the same general occurrence. State v. Humphrey, supra, 357 Mo. 824, 210 S.W.2d 1002, quoted with approval from the Barton case as follows: "It is not possible to determine whether the jurors returned a verdict of acquittal because they credited the testimony in support of appellant's alibi, or for the reason that they found the state's evidence insufficient as to one or more essential elements of the offense charged. They could have utterly disregarded all of the testimony adduced by the appellant in his defense and yet have returned a verdict of not guilty. The verdict and the judgment based thereon were not, therefore, res judicata, as to appellant's alibi, nor as to any other particular fact. They were res judicata only as to the ultimate fact that appellant was not guilty of the crime of which he was accused." The fact that defendant was held in the previous case to be not guilty of shooting Hieatt with intent to kill was not determinative of the issue of self-defense in the trial of the present case, and the trial court did not err in overruling defendant's motion to dismiss the indictment for the assigned reasons.

■■ Defendant admitted that the shot he fired killed Harold Hogan, and there was no contention that the shooting was accidental. There unquestionably was a submissible case on second degree murder. See State v. Finn, Mo.Sup., 243 S.W.2d 67. While there may be some question whether under the circumstances of this case defendant was entitled as a matter of law to an instruction on manslaughter, see State v. Finn, supra, the trial court did give such an instruction and the jury found him guilty of manslaughter instead of murder in the second degree. In this situation, when a submissible case is made as to murder, the defendant is not entitled to complain that a submissible case was not made as to a lesser degree of homicide. State v. Garrett, Mo. Sup., 282 S.W.2d 441; § 545.030 RSMo 1949, V.A.M.S.

■ Defendant contends that the trial court erred in permitting "Lois Gallagher [a witness for the state] to relate all alleged statements made by Sam Bass in the Hogan's Grill" because they were hearsay. Lois testified that defendant and Sam Bass came to the restaurant and that Sam told her he was looking for Harold Hogan and that he was going to kill him. She also stated that defendant then told her that Sam was serious. It is evident that the jury could reasonably find that at the time defendant and Sam Bass were together at the restaurant they were acting together and in concert, and were conspirators within the significance of the term as it is used in determining the admissibility in evidence of statements made by them. 22 C.J.S. Criminal Law § 754, p. 1291. Threats made by either of the conspirators under the circumstances were material and admissible. 22 C.J.S. Criminal Law § 754, p. 1288. The threat of Sam Bass against Harold Hogan was as material as if it had been made by defendant. See also 22 C.J.S. Criminal Law § 746, p. 1284, as to the admissibility of statements made by third persons in the presence of the accused. This assignment is without merit.

■ Defendant asserts that the trial court erred in permitting Lois Gallagher to testify over objection "that she had related to Hieatt Hogan what had transpired in Hogan's Grill during his absence." The only testimony of Lois Gallagher to this effect was interrupted by an objection thereto by defendant which was sustained by the Court. The defendant obtained all

the relief requested. State v. Winslow, Mo.Sup., 11 S.W.2d 1010.

■ When the two Hogan boys and Steingrubey went to the house on Pleasant Street they were in a Ford automobile which Hieatt had borrowed from Nina O'Donnell. On cross-examination Hieatt was asked if he told Nina O'Donnell where they were going in the automobile. The trial court sustained the circuit attorney's objection on the ground that this was immaterial and irrelevant. A colloquy was held, and defense counsel said: "He didn't tell her his reason for using her car and going down there. I think that's a factor that could be considered." The Court again sustained the same objection, and then defense counsel said: "I offer to prove by this witness, if he answered the question, that his answer would be that he doesn't think he told Mrs. O'Donnell where he was going with the car." Defendant asserts in his motion for new trial that the trial court erred in unduly limiting his cross-examination by the above rulings "and thus prevented the defense from impeaching the witness by showing a prior inconsistent statement." The trial court's ruling was obviously correct. "Where the relevancy or admissibility of evidence offered is not apparent it may be rejected unless there is a statement of the purpose of its introduction by which the court may determine its relevancy or admissibility." 23 C.J.S. Criminal Law § 1029, p. 404; State v. Hamilton, Mo.Sup., 310 S.W.2d 906, 908. Nothing was said about impeachment until the motion for new trial, but in any event it would have been an improper attempt to impeach a witness concerning an immaterial matter. See State v. Murphy, 201 Mo. 691, 100 S.W. 414.

■ Defendant's Counsel asked the arresting officer on cross-examination if defendant gave him any trouble. The circuit attorney's objection was sustained, and defendant now asserts this was error "since the defendant's conduct at the time of his apprehension is material and as flight is a condition to be considered by a jury so too is peaceful surrender to be considered by a jury." Defendant related the circumstances of his arrest and stated that he requested Agnes Hogan to call the police. The State did not contend that defendant attempted flight or that he resisted arrest. "Where the state does not seek or offer to prove flight, it is improper to receive evidence on the part of accused that he voluntarily surrendered, or that he did not flee or become a fugitive from justice, or that he refused to flee, even though he had an opportunity to do so, or was advised to do so after suspicions against him were excited." 22 C.J.S. Criminal Law § 625d, p. 961.

■ Sam Bass testified for the defense and on direct examination he stated that he asked the defendant to drive him out to the Hogan restaurant to find out whether Harold was there. He was then asked whether Agnes Hogan "said anything to you concerning any threats that had been made by * * * Harold Hogan towards anybody who would attempt to go out there." An objection was sustained on the ground that the testimony would be hearsay. Defendant offered to prove that in the presence of defendant Agnes told Sam Bass that she "wished they [Sam and defendant] wouldn't go out there [to the Hogan restaurant] because Harold Hogan had threatened to kill anybody who came out looking for him," and that Sam replied that "they were not going to do anything" but just wanted to find out if he was there. Defendant asserts error in this ruling because he was prohibited from showing prior communicated threats by Harold and Hieatt Hogan, and from showing who was the aggressor and the state of mind of defendant and Harold Hogan. In the discussion defendant's counsel admitted that the testimony objected to would be hearsay, but he asserted that it was admissible as an exception because it was a communicated threat which included this defendant and the questions related to self-defense. Assuming that it is material to

show communicated threats by the deceased against the accused in a homicide case, see 26 Am.Jur. Homicide § 364, those threats may not be shown by the testimony of a witness that another person told him that the deceased made the threats. State v. Rapp, 142 Mo. 443, 44 S.W. 270. That is hearsay, and we know of no exception to that rule which would apply. Subsequently in the trial Agnes Hogan testified without objection that Harold Hogan had threatened "that he would get even" with anyone who came looking for him in regard to bills or taxes, and that she told defendant and Sam Bass that she wished they would not go out to the restaurant for that reason. Defendant also testified that Agnes told him of the threats made by Harold Hogan concerning anyone who tried to find him. In view of this testimony no possible prejudicial error could have resulted even if the ruling now complained of was erroneous, which it was not.

■ Defendant asserts that the trial court erred in sustaining an objection "when defense counsel inquired of Sam Bass on direct examination" as to whether or not he had ever heard Harold or Hieatt Hogan make any threats concerning anyone who would attempt to locate Harold, and in refusing to permit the defendant to testify that when he walked out of the house with the shotgun he knew that he was within the class of persons threatened by the Hogans. We find no such questions or rulings, or anything similar, in the transcript. Defendant also contends that the trial court erred in sustaining an objection when defense counsel inquired of Agnes Hogan whether any threats had been made by Harold Hogan directed to anyone who attempted to locate him. Agnes Hogan was permitted to testify that she told Sam Bass and defendant that she "would rather they wouldn't go out there because Harold Hogan had threatened that he would get even with anyone that came near or looking for him." Later she testified that she was awarded $3,900 in the divorce proceedings but Harold and Hieatt told her she "wasn't going to get a dime." This last statement was stricken out on request of the State. Defense Counsel then asked: "Did either one of them or both of them make any threats?" The Court sustained an objection, and it appears that it did so because the question called for threats made against Agnes. Defendant made an offer of proof that Agnes would testify that Harold "threatened he would shoot anybody" and that if anyone came to bother him or look for him "he would kill them or bust their brains in," and that Hieatt said, "Yes, and you know we'll do it, too." It was not evident until the offer of proof that it was intended that the answers were to pertain to general threats, but the witness had previously testified as to them. Under the circumstances it was discretionary with the trial court whether to permit the witness to relate again the threats. State v. Rodman, 173 Mo. 681, 73 S.W. 605; State v. Long, Mo.Sup., 253 S.W. 729.

Defendant contends that the trial court erred in not allowing Sam Bass to testify on direct examination as to the reputation of Harold and Hieatt Hogan for viciousness, violence and turbulent character in the community. We find no such question asked concerning the reputation of Hieatt Hogan. Defense Counsel did ask Sam Bass if he knew the reputation of Harold Hogan "for viciousness, violence and turbulence in the community," and Sam replied that he did. He was then asked what that reputation was, and the following occurred:

"A. Well, he had a peculiar weakness. After he took a drink or two he became terribly abusive and violent and threatening and everything else. In fact, I went to a ball game with him one time and he lost a bet to me. He was going to whip me right in the ball park.

"Mr. Reardon [circuit attorney] I am going to object.

"The Court: The objection will be sustained. It will be stricken.

\* \* \* \* \* \*

"Mr. Bardgett: [defense counsel] The objection goes only to the part about the ball park doesn't it?

"The Court: Yes.

"Mr. Reardon: That's right, that's all I objected to.

\* \* \* \* \* \*

"The Court: That wouldn't be admissible.

"Mr. Bardgett: That's right."

There were no further questions asked of or testimony given by this witness concerning the reputation of the Hogan brothers. The assignments of error are without merit.

Defendant next claims the trial court erred by sustaining the State's objection to questions directed to him on direct examination as to whether Agnes Hogan had said anything to him concerning the reputation of Harold and Hieatt in the community for violence; turbulence and aggressiveness and whether she had said anything to him concerning threats made by Harold and Hieatt that they would do violence to anyone who attempted to locate Harold. Defendant testified that Agnes told him and Sam Bass not to go out to the Hogan restaurant because they "might have trouble with him;" that she told him about "threats that had been made;" that she told him about "threats that Harold Hogan had made concerning anybody who tried to find him or learn his whereabouts or assist her;" that "she told me how bad he was;" and that she also said "they come to the house one time and threatened her; that if anybody tried to locate Harold Hogan they were in for trouble." Later, defendant's counsel again asked him if anyone told him of any threats of great bodily harm that the Hogans, either one of them, had made concerning anybody who would try to find Harold Hogan. The trial court sustained an objection on the ground that

this was repetitious, a matter within its discretion when the offered testimony was in fact repetitious, which it was. State v. Long, supra.

During his direct examination defendant was asked whether Agnes Hogan said anything to him "about Harold Hogan's reputation for violence, viciousness, turbulence or anything like that." An objection was sustained because it was hearsay. Defendant admitted the killing but claimed to have acted in self-defense, so he was entitled to show the general reputation of the deceased for violence when the proper foundation was laid, 26 Am.Jur. Homicide §§ 344–345, and when done in the proper manner by witnesses who were qualified to testify as to the general reputation of the deceased in the community in which he lived. 26 Am.Jur. Homicide § 346. But, it was not proper to show this reputation by asking the defendant if Agnes Hogan had told him about it. If the purpose of this question was to show that defendant had knowledge of the deceased's reputation, it does not so appear from the record by way of explanation or offer of proof. We find no error in this ruling.

Defendant charges that "the trial court erred in refusing to permit defendant to testify that he did not wilfully shoot the deceased Harold Hogan," and he asserts the trial court erred "in sustaining the State's objection when defense counsel inquired of Harry James Chamineak whether or not he meant to kill Harold Hogan." The trial court did not refuse to permit the defendant to testify that he did not wilfully shoot the deceased. In fact, the defendant testified to the contrary; that when he saw Harold Hogan with a gun he "jumped back and brought my shotgun up and fired," and that he shot "because I did not want him to shoot me."

On direct examination defendant was asked: "All right, now then, did you intend to kill this man?" He replied: "No sir, I didn't." The circuit attorney then

objected, and the trial court ordered the answer stricken and instructed the jury to disregard it. Defense counsel then asked: "Why did you fire your gun, why?" and defendant answered, "Because I did not want him to shoot me." Defendant also testified that he took the shotgun with him to protect himself, and that he did not think about shooting Harold Hogan before he shot. "The general rule is that, especially in cases of personal violence of one person toward another, when the intention, motive, or reason of accused is material, as where the intent is an essential element of the crime, or where the matter is an issue in the case, accused may testify directly thereto, * * *." 22 C.J.S. Criminal Law § 647; 26 Am.Jur. Homicide § 324; Annotations, 23 L.R.A.,N.S., 388; 34 L.R.A.,N.S., 324; Spannell v. State, 83 Tex.Cr.R. 418, 203 S.W. 357, 2 A.L.R. 593; Wigmore on Evidence, 3rd ed., § 581 and § 1965. Missouri follows this rule. In State v. Fletcher, Mo.Sup., 190 S.W. 317, 321, the defendant was charged with first degree murder, and found guilty of second degree murder. In that opinion it was said: "Counsel for defendant asked him on the witness stand whether he intended to kill the deceased when he struck him. Defendant answered, 'No.' Counsel for the state thereupon interposed an objection to the question, which the trial court sustained * * *. Under our holdings in State v. Palmer, 88 Mo. 568, and State v. Banks, 73 Mo. 592, this ruling was error; * *." In the pending case the error was not prejudicial for two reasons. First, even though the court erroneously prohibited the defendant from saying directly that he did not intend to kill Harold Hogan, he did testify that he shot the gun because he did not want Hogan to shoot him, and that he did not aim the gun and did not think about shooting Hogan before he shot. This is similar to the factual situation in State v. Fletcher, supra. There, after the objection to the question of whether the defendant intended to kill the deceased was sustained, the defendant was permitted to testify that he hit the defendant because he thought the deceased would shoot him or knock him in the head with "knucks." It was held that "the purpose sought to be accomplished by the proof of intent in the first inquiry was supplemented by the last, in which the defendant sought to establish the fact that, while he had not intended to kill the deceased, he did intend to use such force as would be necessary to repel the assault of the latter. Therefore, despite the error of the trial court in the sustaining of the objection to the inquiry made of the defendant, we will not, in a case of this character, where the defendant has had the full benefit of his own evidence, has suffered no injury, and the testimony of many witnesses and the physical facts are against him, reverse the judgment." We think that is the same situation as this case. We also note that it is somewhat incongruous for defendant to say that he did not intend to kill Harold Hogan when he intentionally shot him in the head with a shotgun from a distance of five or six feet.

The second reason no prejudicial error resulted is that defendant was not found guilty of second degree murder, the offense charged in the indictment, but was found guilty of manslaughter. An intent to kill is an essential element of murder in the second degree. State v. Baber, Mo. Sup., 297 S.W.2d 439. That is, the killing, among other things, must be wilful. State v. Archer, Mo.Sup., 328 S.W.2d 661. But while there may exist such an intent it is not an indispensible element of manslaughter. State v. Baker, Mo.Sup., 277 S.W.2d 627; State v. Recke, 311 Mo. 581, 278 S.W. 995; State v. Frazier, 339 Mo. 966, 98 S.W. 2d 707. For this reason, the verdict cured the error, if any.

After Harold Hogan's body was taken to the morgue a blackjack was found in the pocket of his trousers. Hieatt Hogan testified that he had not seen Harold have the blackjack on the night of the killing, and that he had not seen the blackjack at any time before March 1, 1958. Defense counsel did not ask any questions on cross-

examination concerning this blackjack, and therefore did not ask any warning question for impeachment purposes. Agnes Hogan, a witness for defendant, was asked on direct examination if she had ever seen Harold give the blackjack to Hieatt, and the State's objection was sustained. By his offer of proof defendant asserted that Agnes would have testified that shortly after the divorce (July 1, 1957) she saw Harold give Hieatt a blackjack, and "this is for the purpose of showing that Hieatt Hogan had possession of the blackjack which he had denied knowledge of." Defendant asserts this ruling was error. For two reasons it was not. First, no warning question was asked. See State v. Heath, 221 Mo. 565, 121 S.W. 149. Second, it purported to impeach a witness on a collateral matter, State v. Barker, 296 Mo. 51, 246 S.W. 909; State v. Bunton, 312 Mo. 655, 280 S.W. 1040, which was not prejudicial to defendant. State v. Wood, 321 Mo. 540, 11 S.W. 2d 1040.

■ Defendant asserts that error resulted when the trial court refused to admit into evidence the court file in the case in which he was tried and acquitted of assault with intent to kill Hieatt Hogan. In the opening statement the circuit attorney stated that after defendant shot Harold Hogan, he then fired a second shot and said, "I already got one Hogan, I might as well get another." Defense counsel objected "to them bringing any of that stuff in this case. He was acquitted of that." A colloquy then occurred outside the hearing of the jury in which the trial court commented that the evidence of the shooting of Hieatt Hogan was not necessary, and he instructed the jury to "completely disregard both the statements by Mr. Reardon and Mr. Bardgett with reference to the second shooting." No other mention was made before the jury concerning the shooting of Hieatt Hogan, and no evidence of the shooting of Hieatt Hogan was admitted in the trial of this case.

In State v. Millard, Mo.Sup., 242 S.W. 923, it was held that the State could show

the killing by defendant of another person immediately after the killing of the person for whose homicide he was on trial as a part of the res gestae even though the defendant had previously been acquitted of the charge for that homicide, and that when the State did make such showing the defendant was entitled to offer in evidence the record of that trial showing the judgment of acquittal. See also 22 C.J.S. Criminal Law § 690. But the defendant is not entitled to introduce evidence to show that he was acquitted of some separate offense when the fact of its occurrence is not before the jury. Therefore, the trial judge properly excluded the offered evidence.

■ By eight assignments of error defendant challenges the application to this case of the Habitual Criminal Act, § 556.-280, as amended by Laws of Missouri 1959, S.B.No. 117 § 1. The circuit judge conducted a hearing without the aid of the jury which resulted in the finding by him that defendant previously had been convicted in the State of Nevada of the offense of robbery, which if committed in the State of Missouri would be punishable by the laws of this State by confinement in the penitentiary. After the jury returned the verdict of guilty of manslaughter the sentence was imposed by the Court.

Defendant first contends that the trial court erred in refusing to strike from the indictment that portion pertaining to the previous conviction because in the previous trial of this case, tried before the effective date of the 1959 amendment to the Habitual Criminal Act, the same previous conviction was alleged in the indictment and the jury found defendant guilty of murder in the second degree "and acquitted the defendant on the pleading of one prior felony." In the previous trial the verdict made no mention of or finding in respect to the previous conviction, but a form of verdict authorizing a finding of one previous conviction was submitted to the jury. Defendant was not satisfied with the verdict in the former trial and he appealed from the judgment

rendered pursuant thereto. On appeal the judgment was reversed and a new trial was ordered. Constitution of Missouri 1945, Art. 1, § .19, V.A.M.S., provides that "if judgment on a verdict of guilty be reversed for error in law, the prisoner may be tried anew on a proper indictment or information, or according to law." Whatever was the effect of the action of the jury in the previous trial in making no mention of the previous conviction, defendant waived the issue of double jeopardy (if there could be any) and the issue of res judicata by requesting a new trial. State v. Herring, Mo. Sup., 92 S.W.2d 132. The new trial was to be as to all issues in the indictment; not just as to the ones about which defendant complained. Even if the action of the jury, which defendant contends to have amounted to an "acquittal" of the charge in the indictment of a previous conviction, occurred in a trial other than a previous trial of the same offense, the issue of the previous conviction is not res judicata. State v. O'Brien, Mo.Sup., 252 S.W.2d 357, certiorari denied 345 U.S. 929, 73 S.Ct. 790, 97 L.Ed 1359.

█ Defendant next contends (1) that the new provisions of § 556.280 are not applicable to the trial of this case because the changes became effective "subsequent to the crime alleged in this indictment," and (2) that to make them applicable would be illegal and improper because to do so (a) would result in the defendant being "punished or put in jeopardy by a law coming into effect subsequent to the time the alleged offense was committed" in violation of the Constitution of the United States Art. I, § 10, Cl. 1 and the Constitution of Missouri, Art. I, § 13, which prohibit the enactment of an ex post facto law; (b) would deny him due process of law and equal protection of the laws; and (c) would deny him the right to trial by jury on the fact question of the previous conviction, sentence and discharge therefrom.

In State v. Morton, Mo.Sup., 338 S.W.2d 858, the above contentions were all ruled adversely to defendant. It was there held that § 556.280, as repealed and reenacted by Laws of Missouri 1959, is procedural in nature, and that the trial of an accused after its effective date pursuant to the procedure there prescribed for determining whether the Habitual Criminal Act applies and (if applicable) the assessment pursuant thereto of the punishment by the trial judge is not a proceeding under a statute retrospective in its operation and amounting to an ex post facto law in contravention of the Constitution of the United States, Art. I, § 10, Cl. 1, or of the Constitution of Missouri, Art. I, § 13; that it did not deprive an accused of any constitutional right to have a jury pass on his prior conviction and punishment in contravention of the Constitution of Missouri, Art. I, § 22(a); and that it did not deprive an accused of due process of law or equal protection of the laws in contravention of the Fourteenth Amendment of the Constitution of the United States or deprive him of due process of law in violation of the Constitution of Missouri, Art. I, § 10. See, also, State v. Griffin, Mo.Sup., 339 S.W.2d 803; and State v. Hamey, 168 Mo. 167, 67 S.W. 620, 57 L.R.A. 846. We need not discuss again in detail these matters. The assignments of error challenging the constitutionality and application of the new provisions of § 556.280 are without merit.

█ Defendant contends that the trial court erred in failing and refusing to give an instruction "on the defense of habitat." This contention is without merit. Defendant testified that the Hogan boys were in the automobile in the street, and that he went to that automobile. He also testified that Hieatt Hogan said "Now is your chance, Harold," and Harold said "I'll get him" and brought up a gun. He then jumped back and fired the shotgun at Harold because he did not want Harold to shoot him. This evidence, if believed, supports the theory of self-defense and the Court instructed fully thereon. There is no evidence to warrant an instruction on the right of one to defend his home or

place of habitat. See State v. Dollarhide, 337 Mo. 962, 87 S.W.2d 156.

■ Defendant contends that Instruction Number 2 on manslaughter was erroneous because it "informed the jury that if they did not find the defendant not guilty on the ground of self-defense, then they should convict him of manslaughter, thus depriving the defendant of the right to be acquitted if the evidence in the case failed to convince the jury beyond a reasonable doubt that the State had sustained the burden of proof and erroneously rested the defendant's right to be acquitted solely upon the grounds of self-defense; and for the further reason that even though the jury might find the killing was an excusable homicide by reason of an accident, they would still have to convict the defendant of manslaughter under the Instruction No. 2." Contrary to the contention of the State this instruction is not in the precise form of the instructions on manslaughter which were approved in State v. Bradford, 324 Mo. 695, 24 S.W.2d 993; State v. Pillow, Mo.Sup., 169 S.W.2d 414; State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42; and State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49. However, the instruction is substantially in the previously approved form, and it told the jury that if it found the defendant not guilty of murder in the second degree it should consider whether or not, under the evidence, defendant was guilty of manslaughter. It then defined manslaughter, and hypothesized that if the jury found that defendant "unlawfully, wilfully, and feloniously" shot Harold Hogan and that he died therefrom it should find the defendant guilty of manslaughter *unless* it found the defendant not guilty on the ground of self-defense, and it further stated that *unless* the jury found the facts to be as set forth in this instruction "you will acquit the defendant." Manslaughter was correctly defined in the instruction to be "the killing of a human being not herein declared to be murder, or excusable or justifiable homicide." Justifiable homicide was then defined, and excusable homicide was defined

to include "the accidental killing of another." It is therefore apparent that the instruction is not subject to the criticism made against it by defendant. It did not authorize or require a finding that the defendant was guilty of manslaughter even though the jury found the killing was excusable homicide by reason of an accident. Neither did it tell the jury that self-defense was the only basis upon which the defendant was entitled to an acquittal, and it did not deprive the defendant of the right to be acquitted if the evidence failed to convince the jury beyond a reasonable doubt that the state had sustained its burden of proof. We find no prejudicial error in the giving of this instruction.

■ Defendant requested eleven instructions, designated A through K, all of which were refused. He assigns as error the refusal of each. All of the requested instructions pertain to the defense of self-defense and to the burden of proof pertaining to that defense. The trial court gave the usual instructions on burden of proof and on self-defense, and they are not challenged by defendant in his motion for new trial. Instruction B would have told the jury that because he had previously been acquitted of assault with intent to kill Hieatt Hogan on the ground of self-defense the jury "must find" in the present case "that at the time defendant shot and wounded *Hieatt* Hogan that he acted in self-defense." The shooting of Hieatt Hogan was not an issue in this case, and if it was intended to refer in this instruction to the shooting of Harold Hogan, then for the reasons previously stated in our discussion of res judicata, the defendant was not entitled to this instruction. Other requested instructions cover the same ground as an instruction which was given, or they tend to be argumentative or to constitute an improper comment on the evidence by pointing out certain evidence that might or should be considered by the jury. See State v. Van Horn, Mo.Sup., 288 S.W.2d 919; State v. Walker, 357 Mo. 394, 208 S.W.2d 233. We have studied carefully

each of the eleven requested instructions, and without enumerating the specific provisions of each, we find nothing therein to which defendant was entitled to have submitted to the jury which was not adequately and fully covered by other instructions which were given. The defendant is not entitled to have the State's instructions duplicated. State v. Chick, 282 Mo. 51, 221 S.W. 10; State v. Crow, 346 Mo. 306, 141 S.W.2d 66.

We have examined the record as required by Supreme Court Rule 28.02, V.A.M.R., and find no error respecting the sufficiency of the information, verdict, judgment and sentence.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.